Frank BILLS, Respondent,

v.

**WILLOW RUN I APARTMENTS, a Partnership, under the law of the State of Minnesota, et al., petitioners, Appellants.**

No. C4–94–2358.

Supreme Court of Minnesota.

May 16, 1996.

Kay Nord Hunt, Lemmen, Nelson, Cole & Stageberg, Minneapolis, Emilro R. Givliani, Lee L. Labore & Assocs., Hopkins, for appellants.

Michael Zender, Willmar, for respondent.

Louise Ann Dovre, Rider, Bennett, Egan & Arundel, Minneapolis, amici curiae, for Minnesota Defense Lawyers Assoc.

Paul A. Sortland, Minneapolis, amici curiae, for Minnesota Trial Lawyers Assoc.

## OPINION

TOMLJANOVICH, Justice.

On February 6, 1993, Frank Bills was injured when he fell on an exterior landing outside of his apartment building, Willow Run in Willmar, Minnesota. At the height of a sleet storm, while leaving the building at approximately 6:45 a.m. on his way to work, Bills stepped out of the door onto the landing and slipped on ice that had accumulated as a result of the storm. The exit was well-lit and Bills was aware of the sleet storm that had begun the night before. Bills testified he "took one step out, and [he] went straight up and ended up landing on [his] back." He

now claims he suffers continual pain from this accident; his injuries causing reduced mobility in his back.

Bills sued Willow Run alleging that the landing, its handrails and risers were in violation of the Uniform Building Code (UBC). It is Bills' contention that Willow Run's violation of the UBC was the proximate cause of his injuries and that such a violation is negligence per se.

Willow Run filed two motions for summary judgment and the trial court denied both motions. The case went to a jury trial in September of 1994. Bills called a building inspector to testify. The inspector had inspected the landing at Bills' request after the accident. The inspector determined that the landing was six and three-quarters inches below the threshold of the doorway and that the 1970 UBC, in effect at the time the building was constructed, required a 2–inch threshold. The inspector also testified that the handrails on the landing were 91 inches apart and the UBC required them to be no more than 88 inches apart. On cross-examination the inspector conceded that the two-riser stairs did not require handrails under the UBC. He also testified that the issuance of a certificate of occupancy would lead a reasonable building owner to believe that the building met all of the UBC requirements.

At the close of Bills' case in chief, the trial court granted Willow Run's motion for a directed verdict on the grounds that Bills had failed to show Willow Run had either actual or constructive knowledge of the alleged defective condition and UBC violation, and the trial court believed the accident probably would have happened regardless of the violation given the inclement weather conditions. Bills moved for a new trial based on trial court error, contending the trial court improperly concluded that he had not produced sufficient evidence of negligence to justify submission of the case to a jury, and that the trial court improperly concluded a violation of the UBC was not negligence per se. The motion for a new trial was denied.

Bills appealed and the court of appeals reversed. The court of appeals found that a violation of the UBC was negligence per se and "resulted in hidden or unanticipated dangers." *Bills v. Willow Run I Apartments,* 534 N.W.2d 286, 290 (Minn.App.1995). The court of appeals found sufficient evidence to present a question of fact to the jury as to the proximate cause of Bills' injuries.

We now reverse, finding that common law landlord/tenant standards of liability apply. Thus, without notice of the violation and an opportunity to remedy, the landlord or owner is not negligent per se. We disagree with the court of appeals' decision that a UBC violation impliedly creates hidden or unanticipated dangers, thus somehow imputing knowledge to the landlord and owner.

In *Alderman's Inc. v. Shanks,* 536 N.W.2d 4 (Minn.1995), we held "that breach of a statute gives rise to negligence per se if the *persons harmed by that violation are within the intended protection of the statute,* and the *harm suffered is of the type the legislation was intended to prevent." Id.* at 8 (original emphasis)(quoting *Pacific Indemnity Co. v. Thompson–Yaeger, Inc.,* 260 N.W.2d 548 (Minn.1977)). However, in the case of a landlord, violation of the UBC without notice will not create negligence per se. In *Johnson v. O'Brien,* 258 Minn. 502, 105 N.W.2d 244 (1960), we held that the liability of a landlord extends to those dangerous conditions of which he had knowledge and those dangerous conditions "of which he had reasonable grounds to suspect." *Id.,* 105 N.W.2d at 246. If there is no knowledge or suspicion of any dangerous conditions, there is no negligence per se.

■ Bills argued that Willow Run was negligent per se because the landing on which he fell met neither the Willmar Building Code nor the UBC. He argues that Willow Run had an obligation to know that the violation existed and could not simply rely on one inspector as proof that the landing was safe. It is his contention that Willow Run, as owner of the complex, should have known that the landing did not meet UBC height requirements and it should not be able to claim ignorance of the law. This argument is flawed.

Willow Run reasonably relied on the inspection reports of a state building inspector. Under Bills' theory, every landlord or owner

would be required to re-inspect his/her building after the certified building inspector issued an occupancy permit and inspection report. Failure to do so could leave the landlord or owner liable under a negligence per se claim, if an inspector failed to identify a UBC violation and a tenant was injured.

Bills had knowledge of the threshold differential because he had lived there for seven months and had used the entry "countless times." He was also aware that it was still sleeting when he left for work the morning of the fall. Bills concedes that he slipped on the ice. He claims, however, that his injuries were directly caused by the violations of the UBC. It is his contention that, had the handrails and landing met Code, he would not have fallen, but would have been able to right himself after he slipped. Bills can only speculate that he may have been able to catch himself; he may also still have fallen and injured himself because the ice was the major factor in his fall, not the landing differential.

The North Carolina Supreme Court set a standard in similar cases in its opinion in *Lamm v. Bissette Realty, Inc.*, 327 N.C. 412, 395 S.E.2d 112, 114 (1990):

> [T]he owner of a building may not be found negligent *per se* for a violation of the Code unless: (1) the owner knew or should have known of the Code violation; (2) the owner failed to take reasonable steps to remedy the violation; and (3) the violation proximately caused injury or damage.

We find this standard to have merit. It links the negligence per se and common law landlord/tenant standards into one that defines a fair and just result. This standard also marries well with section 104 of the 1994 version of the UBC. Section 104 sets out the rules of notice and remedy, and the consequences of failure to remedy once notice has been given.[1]

 A landlord or owner is not negligent per se for a violation of the UBC unless: (1) the landlord or owner knew or should have known of the Code violation; (2) the landlord or owner failed to take reasonable steps to remedy the violation; (3) the injury suffered was the kind the Code was meant to prevent; and (4) the violation was the proximate cause of the injury or damage.

We address briefly the reason the trial court granted the motion for a directed verdict. Bills argues that the trial court should have allowed the case to go to the jury. In *Usher v. Allstate Insurance Co.*, 300 Minn. 52, 218 N.W.2d 201 (1974), we held that the "trial court's authority to direct a verdict is to be exercised cautiously and sparingly. Caution is especially required where the motion is made upon the ground of failure of proof at the close of plaintiff's case in chief * * *." *Id.* 218 N.W.2d at 205 (citations omitted).

While the trial court's speculation may not have been correct that the fall would, even without the UBC violation, have occurred given the inclement weather, the decision itself was still sound. It was based upon the fact that Bills did not present any evidence that Willow Run knew of the Code violation. Bills did not show that the Code was designed to prevent persons from slipping on icy surfaces; and Bills brought forth no evidence that Willow Run's violation of the building code was the proximate cause of the accident.

We now reverse the court of appeals and remand to the trial court for reinstatement of the directed verdict.

Reversed and remanded.

---

1. Section 104 of the 1994 Uniform Building Code has several sections that cover everything from the inspector's authority to testing procedures to ensure code compliance. In section 104.2.5 Occupancy violations, the Code states: whenever any building or structure * * * regulated by this code is being used contrary to the provisions of this code, the building official may order such use discontinued and the structure, or portion thereof, vacated *by notice served* on any person causing such use to be continued. Such person shall discontinue the use * * * *after receipt of such notice* to make the structure * * * *comply with the requirements of this code.*

1 U.B.C. § 104.2.5 (1994)(emphasis added).