Ted GRADJELICK et al., Petitioners, Appellants,

v.

Leland HANCE et al., Respondents,

Connie Jo Klosterman, Respondent.

No. C4–00–2161.

Supreme Court of Minnesota.

June 27, 2002.

Andrew S. Birrell, R. Travis Snider, Birrell & Newmark, Ltd., Minneapolis, for Appellant.

Jerome B. Abrams, Lisa M. Lamm, Abrams & Smith, P.A., Minneapolis, for Respondent Hance.

Timothy J. Leer, Johnson & Condon, P.A., Minneapolis, for Respondent Klosterman.

## OPINION

ANDERSON, PAUL H., Justice.

Appellants Ted and Niki Gradjelick brought a negligence action against respondents Leland and Patricia Hance and respondent Connie Jo Klosterman for injuries arising out of an apartment building fire. The Gradjelicks' suit is based on the Hances' alleged knowledge of building and fire code violations and unsafe conditions. The Hances brought a motion for summary judgment, arguing that they had no actual or constructive knowledge of any fire code violations. The district court granted the Hances' motion and dismissed the Gradjelicks' action on the grounds that the Hances relied upon an official building inspection report. The Gradjelicks appealed and the Minnesota Court of Appeals affirmed. The court of appeals concluded that a landowner relying on an official inspection lacks constructive knowledge of code violations and therefore cannot be liable in an ordinary negligence action or in an action based on negligence per se. We reverse.

Leland Hance purchased a mixed-use building at 204 Water Street in Excelsior, Minnesota in 1982. During all times relevant to this case, the first floor of this building was occupied by a hardware store and the second floor consisted of nine residential apartments. The Gradjelicks and Connie Jo Klosterman were tenants of the Hances and occupied units two and nine, respectively. These units were located directly across the common hallway from each other. The Hances lived in Colorado

at the time of the fire and since 1992 have employed a manager for the apartments.

On April 25, 1999, at approximately 6:30 a.m., the Gradjelicks awoke to the smell of smoke coming from the hallway. Mr. Gradjelick looked out their front door and discovered that the building was on fire. Mrs. Gradjelick called 911, opened their bedroom window, and waited for firefighters to help them evacuate. After the firefighters arrived, Mr. Gradjelick watched as they helped his wife out of the window. While he was waiting to be helped down the ladder, he felt intense heat on his back and was "forced" to fall out of the window. He fell to the ground, suffering a multiple compound fracture of his right leg, a severe cut on his foot from heel to toe, injuries to his back and knee, and first-degree burns on his back and legs.

Later that morning, after the fire was put out, a Deputy State Fire Marshal Investigator inspected the building and concluded that the fire started when Klosterman fell asleep while smoking. Klosterman had apparently been drinking heavily the night before and, when tested that morning, had a blood alcohol concentration of 0.34. Klosterman was subsequently charged with negligent fire, a felony under Minn.Stat. § 609.576, subd. 1(b)(3) (2000).

The Gradjelicks brought a negligence action against the Hances and Klosterman in Hennepin County District Court. They alleged that (1) the fire was caused by Klosterman's negligence, (2) the Hances negligently maintained the premises, and (3) Klosterman's and the Hances' negli-

gence was the proximate cause of their injuries. Both the Gradjelicks and Klosterman retained separate experts to investigate the fire. In an affidavit, the Gradjelicks' expert, Robert Schroeder, concluded that the building did not meet the requirements of the 1997 Uniform Fire Code.[1] Specifically, Schroeder noted the following conditions:

(1) failure to eliminate or adequately cover transom openings;

(2) unrated doors in the common hallway;

(3) windows from the Gradjelicks' unit to the hallway did not contain rated wire glass;

(4) no self-closing mechanism on the door to Klosterman's unit; and

(5) improper wainscoting treatment in common hallway.

Schroeder stated that, in his opinion, but for these conditions the fire could have been contained in Klosterman's apartment.

In a separate statement, Klosterman's expert, John Slanga,[2] noted similar conditions and code violations in Klosterman's apartment that in his opinion led to the spread of the fire from Klosterman's apartment. These conditions and violations included:

(1) no smoke detector in Klosterman's unit;

(2) improper paneled-over window from Klosterman's kitchen to unit # 8;

(3) improper glass transom between Klosterman's unit and hallway;

---

**1.** In addition to the 1997 Uniform Fire Code, the Gradjelicks also assert that there were violations of the National Fire Protection Association 101 life-safety code and the Uniform Building Code.

**2.** The parties refer to Slanga's statement as an "affidavit," but we note that Slanga's state-

ment is neither sworn nor notarized. At oral argument, counsel for the Gradjelicks admitted that the statement was neither sworn nor notarized, but explained that it was signed, presented, and relied upon by both the district court and the court of appeals.

(4) improper door between Klosterman's unit and hallway;

(5) no self-closing mechanism on door to Klosterman's unit; and

(6) no "positive latching" on door to Klosterman's unit.

Additionally, Slanga noted other dangerous conditions and code violations in the hallway that affected safety and escape, including:

(1) improper fire resistance rating in the hallway due to glass windows and transoms;

(2) no required smoke barrier partitions;

(3) improperly installed smoke detectors (18 inches below ceiling);

(4) unrated hallway doors (below 20 minute construction);

(5) "flame spread rating" of means of egress excessive (not Class A or B);

(6) no self-closing mechanisms on hallway doors; and

(7) no exit signs.

Slanga also indicated that proper installation of the smoke detectors could have been performed by reading the installation instructions. According to Slanga, because the installation distance of 18 inches below the ceiling was improper, the detectors were ineffective due to delayed operation.

The Gradjelicks commenced discovery and, although they argue that their discovery was not complete by the time of the summary judgment motion, they were able to obtain some relevant information from the Hances. Specifically, the Gradjelicks learned that there had been no structural renovations of the building during the period of the Hances' ownership until the fire—1982 to 1999. But during this time the Hances had made several repairs, including (1) hardwiring the electrical system for the smoke detectors in the hall-way, and (2) replacing a pane of broken glass in an interior hallway window in the Gradjelicks' apartment.

Based on this discovery information, as well as on the complaint, Slanga's statement, and Schroeder's affidavit, the Gradjelicks argue that the transformation of the building from office space to residential failed to create a secure hallway. They assert that there was an unsafe condition in violation of the applicable building and fire codes and, because the Hances made subsequent repairs, the Hances were aware of this unsafe condition. Additionally, the Gradjelicks assert that there was a missing smoke detector in Klosterman's apartment.

The Hances moved for summary judgment, arguing that they had no actual or constructive knowledge of any dangerous conditions or code violations at the time of the fire. They contend that they lived in Colorado, had no independent knowledge of the fire code, and instead relied on an annual building inspection and communications from their property manager, Troy Stottler, regarding any unsafe conditions or code violations. The Hances submitted several affidavits in support of their motion for summary judgment, including affidavits from Stottler, Leland Hance, and Excelsior's Fire Marshal, Scott Anding.

According to these affidavits, Excelsior requires properties to pass an annual building inspection by the fire department in order to obtain a multiple dwellings permit for commercial rental properties. The annual inspection is made to determine whether the property meets the requirements of the Uniform Fire Code. According to Anding, Excelsior adopted the 1997 Uniform Fire Code in 1998. However, Anding stated that the city interprets the code to require that nonconforming structural conditions in buildings that ex-

isted when the code was adopted be corrected only upon commencement of new construction. Anding also stated that, in his annual building inspections, he looks for conditions that can be corrected without construction activity. If no such conditions exist, it is Anding's standard practice to issue an annual permit.

The record reveals that three months before the fire, Anding inspected the Hances' building. Anding found no code violations that could be corrected without construction activity and issued the multiple dwellings permit. Additionally, Anding prepared a one-page summary of his inspection in which he indicated "No Hazards Observed." He gave the inspection report to Stottler. The record further shows that, from the date of the inspection in January until the time of the fire in April, no complaints regarding unsafe conditions in the building were communicated to Anding, Stottler, or the Hances.

The Gradjelicks presented two main arguments in opposition to the summary judgment motion. First, they argued that the Hances knew or should have known of the defective conditions. Specifically, they asserted that the Hances knew or should have known about the conditions because the defects were numerous and obvious and that the Hances were directly involved with some of the defects, including the installation of the electrical system for the smoke detectors and repairing a window in the Gradjelicks' apartment. The Gradjelicks argued that the Hances cannot rely on the inspection report revealing no violations because the Hances were directly involved with the defective conditions. In their second main argument, the Gradjelicks argued that summary judgment was inappropriate because discovery was not complete.

The district court granted the Hances' motion for summary judgment on the grounds that the Gradjelicks failed to show that the Hances had actual or constructive knowledge of the code violations. The court concluded that, under *Bills v. Willow Run I Apartments*, 547 N.W.2d 693, 695 (Minn.1996), the Hances were relieved of any duty to "re-inspect" the building for hazards after receipt of the Fire Marshal's inspection report and receipt of the multiple dwellings permit. Additionally, the court noted that the Hances fully relied on the inspection report and had no independent knowledge of the applicable building code.

The Gradjelicks appealed and the court of appeals affirmed. The court of appeals concluded that the district court applied the correct legal standard from *Bills*. Specifically, the court of appeals concluded that a landowner relying on an official inspection lacks constructive knowledge of code violations, both in an ordinary negligence action and in negligence per se. The Gradjelicks then petitioned this court for review of the court of appeals' decision.

I.

On appeal from summary judgment, we must determine whether the lower courts applied the correct legal standard and whether there are genuine issues of material fact for trial. *DLH, Inc. v. Russ*, 566 N.W.2d 60, 69 (Minn.1997). In a negligence action, the defendant is entitled to summary judgment when the record reflects a complete lack of proof on any of the four essential elements of the claim: (1) the existence of a duty of care, (2) a breach of that duty, (3) an injury, and (4) the breach of the duty being the proximate cause of the injury. *Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn.1995). A nonmoving party cannot defeat a summary judgment motion with unverified and conclusory allegations or by postulating evidence that might be developed at trial.

*See id.* Instead, if the nonmoving party bears the burden of proof on an issue, that party must present sufficient evidence to permit reasonable persons to draw different conclusions. *DLH,* 566 N.W.2d at 71. When reviewing a summary judgment ruling, we consider the evidence in the light most favorable to the nonmoving party. *Hoover v. Norwest Private Mortg. Banking,* 632 N.W.2d 534, 542 (Minn.2001).

 We first address whether the district court applied the correct legal standard. Minnesota follows the common law rule that landlords are generally not liable—have no duty of care—to tenants for damages caused by defective conditions on the premises. *See, e.g., Johnson v. O'Brien,* 258 Minn. 502, 504–06, 105 N.W.2d 244, 246–47 (1960); *Breimhorst v. Beckman,* 227 Minn. 409, 417, 35 N.W.2d 719, 726 (1949). Several exceptions apply to this common law rule. The exception most applicable to the facts of this case is the hidden dangerous condition exception. This exception creates a duty of care in the landlord such that the landlord may be liable to tenants for breach of that duty when there is a hidden dangerous condition on the premises of which the landlord is aware, but the tenant is not. *Breimhorst,* 227 Minn. at 417, 35 N.W.2d at 726. Further, a landlord's awareness of a hidden dangerous condition is not limited to actual knowledge. Instead, we have slightly expanded common law landlord liability, holding that a landlord may be liable to a tenant for defective conditions on the premises if the landlord *should have known* of the danger and if the tenant, exercising due care, would not discover the danger. *Johnson,* 258 Minn. at 506,

105 N.W.2d at 247 (holding that constructive knowledge of a dangerous condition is also a basis for landlord liability).

 Another exception potentially applicable to the facts of this case is the "common area" exception.

A landlord who retains possession and control of stairways and similar building facilities for the common use of the tenants therein, although not an insurer of the safety of these facilities, owes a duty of exercising ordinary care to see that such stairways and facilities are originally constructed *and subsequently maintained* in a reasonably safe condition for the use of tenants who are themselves exercising ordinary care.

*Nubbe v. Hardy Cont'l Hotel Sys. of Minnesota, Inc.,* 225 Minn. 496, 499, 31 N.W.2d 332, 334 (1948) (emphasis in original). We also recognize that a landlord owes a duty of care to tenants when the landlord repairs the premises. *See, e.g., Canada By and Through Landy v. McCarthy,* 567 N.W.2d 496, 504 (Minn. 1997) (citing *Wood v. Prudential Ins. Co. of America,* 212 Minn. 551, 4 N.W.2d 617 (1942)).

 We have recognized that landlords may be liable under a theory of negligence per se [3] for violations of applicable building or fire codes if the persons harmed by the violation are within the intended protection of the code and if the harm suffered is of the type the code was intended to prevent. *Alderman's, Inc. v. Shanks,* 536 N.W.2d 4, 8 (Minn.1995). However, we have restricted situations in which violation of the Uniform Building

---

**3.** A per se negligence rule substitutes a statutory standard of care for the ordinary prudent person standard of care, such that a violation of a statute (or an ordinance or regulation adopted under statutory authority) is conclusive evidence of duty and breach. *See, e.g.,*

*Alderman's, Inc. v. Shanks,* 536 N.W.2d 4, 7–10 (Minn.1995) (addressing fire codes specifically); *Seim v. Garavalia,* 306 N.W.2d 806, 810 (Minn.1981) (explaining negligence per se).

Code (UBC) will result in negligence per se for landlords. *Bills*, 547 N.W.2d at 695.

In *Bills*, a tenant who fell on an icy landing sued his landlord under a negligence per se theory for violation of the UBC. 547 N.W.2d at 693–94. The tenant alleged that the handrails and risers on the landing violated the UBC and were the proximate cause of his injuries. *Id.* at 694. In our decision, we adopted a new standard for landlord liability governing violations of the UBC in negligence per se actions, holding that a landlord is not negligent per se for code violations unless the following four elements are present:

(1) the landlord or owner knew or should have known of the Code violation;

(2) the landlord or owner failed to take reasonable steps to remedy the violation;

(3) the injury suffered was the kind the Code was meant to prevent; and

(4) the violation was the proximate cause of the injury or damage.

*Id.* at 695.

The tenant in *Bills* did not offer any evidence that the landlord knew of the violations other than the fact of the code violation itself. *Id.* Further, we noted that the landlord reasonably relied on the reports of a state building inspector. *Id.* at 694. We then implied that a landlord has no duty to "re-inspect" buildings after a favorable inspection and may reasonably rely upon a state building inspector's inspection report and occupancy permit regarding the premises' safety. *Id.* at 694–

95. Because the tenant in *Bills* did not present evidence that showed the landlord's knowledge of the code violation, we affirmed the district court's directed verdict for the landlord. *Id.* at 695. Implicit in our holding was that the mere fact of a code violation does not constitute constructive knowledge of the violation.

The Gradjelicks argue that the district court and the court of appeals misconstrued *Bills* and improperly extended its holding from the negligence per se context to ordinary negligence. Specifically, the Gradjelicks argue that while reliance on an inspector's report may preclude liability in negligence per se under *Bills*, a proper interpretation of *Bills* does not allow a court to conclude that the Gradjelicks are unable to show the Hances' knowledge of code violations under an ordinary negligence theory. The Hances argue that the lower courts' application of *Bills* was proper. Accordingly, we must examine in some detail how those courts construed *Bills*.

The district court began its analysis by correctly stating Minnesota's general standard for landlord liability for defective conditions.[4] The court also correctly stated the negligence per se standard from *Bills* regarding code violations. However, when ruling on the summary judgment motion, it appears that the court only analyzed the elements of negligence per se instead of considering the elements of an ordinary negligence claim as well. Thus, it appears that the district court erred in its interpretation and application of *Bills*.

---

4. The court cited *Broughton v. Maes*, 378 N.W.2d 134 (Minn.App.1985), *rev. denied* (Minn. Feb. 14, 1986). In *Broughton*, the court of appeals discussed the principle that landlords generally are not liable to tenants for damages caused by defective conditions on the premises. *Id.* at 135. The court also discussed several exceptions to this rule, including (1) hidden dangerous condition; (2) common area; and (3) negligent repair. *Id.* The court also discussed an exception when land is leased for purposes involving admission of the public. *Id.* The case before us does not involve land leased for admission of the public.

■ In its analysis, the district court confused and failed to separate the liability standards for ordinary negligence and for negligence per se. The court acknowledged the Gradjelicks' allegations of several code violations and their allegation that the Hances improperly installed the fire alarms. But when citing *Bills,* the court made the following statement, "Plaintiffs have failed to show that Defendants knew or should have known of any *fire code violations,* and that is a crucial element to Plaintiff's claim under Minnesota law." (Emphasis added.) This statement is misleading. Actual or constructive knowledge of code violations is a required element of a negligence per se claim for UBC violations under *Bills,* but actual or constructive knowledge of *code violations* is not a required element in an ordinary negligence claim. Under the hidden dangerous condition exception to the general standard of landlord liability noted above, plaintiffs are required to show a landlord's actual or constructive knowledge of a *hidden dangerous condition.* Such hidden dangerous conditions may include, but are not limited to, code violations; therefore, the district court was in error when it stated that the Hances' actual or constructive knowledge of a *code violation* was a "crucial element" of the Gradjelicks' claim under Minnesota law.

■ The district court also failed to consider other exceptions upon which landlord liability can be founded in ordinary negligence, including the "common area" and "negligent repair" exceptions. Neither of these exceptions requires actual or constructive knowledge of a code violation. *See Canada,* 567 N.W.2d at 504 (addressing the negligent repair exception);

*Nubbe,* 225 Minn. at 499, 31 N.W.2d at 334 (addressing the common area exception). Instead, the only required elements to establish a claim under these exceptions are duty, breach, causation, and damages—the elements of ordinary negligence. *See Hudson v. Snyder Body, Inc.,* 326 N.W.2d 149, 157 (Minn.1982). Thus, to the extent that the court required actual or constructive knowledge of a code violation as a prerequisite to landlord liability, it erred. Specifically, the court applied the incorrect legal standard, conflating the ordinary negligence and negligence per se standards in the context of landlord liability.[5] This error was compounded when the court of appeals apparently accepted the district court's analysis, concluding that "if the facts alleged failed to fulfill the knowledge requirement under negligence per se theory, identical facts asserted as common law negligence likewise fail." *Gradjelick v. Hance,* 627 N.W.2d 708, 713 (Minn.App. 2001).

■ While both the district court and the court of appeals used *Bills* to support their conclusions, they have incorrectly interpreted our holding. In *Bills,* we only discussed and applied a standard regarding negligence per se. 547 N.W.2d at 695. We did not indicate that we were developing the law regarding ordinary negligence, nor did we comment on how UBC violations should be analyzed under an ordinary negligence theory. We only intended to bring the negligence per se analysis for landlord violations of the UBC more in line with the standard used for ordinary negligence in landlord liability, rather than creating a rule that UBC violations must always be analyzed under negligence per se. *See id.* Accordingly,

---

5. It should be noted that the district court's order and memorandum are not completely silent regarding the correct standard. The introduction to the court's memorandum refers to both code violations and hazardous conditions, but the analysis consistently focuses on and specifically refers only to code violations.

we added a requirement already present in ordinary negligence claims for landlord/tenant liability for hidden dangerous conditions—a requirement for actual or constructive knowledge of the condition. *Id.* We also concluded that we would not impute constructive knowledge of a code violation to the landlord; instead, we indicated that a landlord's reasonable reliance on an official inspection report and occupancy permit may prevent a finding of constructive knowledge. *Id.* at 694. However, we did not hold that we intended for a negligence per se analysis to supplant an analysis under ordinary negligence. A separate analysis is necessary under each theory because the elements are different. Actual or constructive knowledge of code violations is a required element under negligence per se, but actual or constructive knowledge of hidden dangerous conditions is a required element under the hidden dangerous conditions theory of ordinary negligence and such conditions are not coextensive with code violations.

■■■■ To summarize our analysis, we conclude that (1) *Bills* articulated a standard for negligence per se based on UBC violations; (2) *Bills* did not create a unified standard such that allegations of code violations must be analyzed only under negligence per se; and (3) analyses under negligence per se according to *Bills* and ordinary common law negligence are both available in landlord liability cases when UBC violations are alleged. Therefore, the district court erred because it analyzed only whether the Gradjelicks were able to satisfy the elements of negligence per se under *Bills* instead of analyzing the Gradjelicks' claim under an ordinary negligence theory. Accordingly, we hold that the court of appeals erred when it concluded that it was "unable to articulate a principled distinction between per se and common law negligence theories for the purposes of this analysis." *Gradjelick*, 627 N.W.2d at 713.

## II.

■■■■ Having clarified the proper legal standards applicable to the Gradjelicks' claims, we next determine whether there are genuine issues of material fact that preclude summary judgment under Minn. R. Civ. P. 56.03. Summary judgment is appropriate if there is no genuine dispute regarding the material facts and the moving party is entitled to judgment under the law applicable to such facts. *DLH*, 566 N.W.2d at 69. Accordingly, the Gradjelicks must have presented sufficient evidence regarding a material fact to permit reasonable persons to draw different conclusions in order to survive summary judgment. *Id.* at 71. On the other hand, the Hances are entitled to summary judgment when the record reflects a complete lack of proof on any of the four essential elements of the ordinary negligence claim: (1) the existence of a duty of care, (2) a breach of that duty, (3) an injury, and (4) the breach of the duty being the proximate cause of the injury. *See Lubbers*, 539 N.W.2d at 401. Similarly, the Hances are entitled to summary judgment if there is a complete lack of proof on any of the essential elements of their negligence per se claim: (1) the landlord or owner knew or should have known of the code violation; (2) the landlord or owner failed to take reasonable steps to remedy the violation; (3) the injury suffered was the kind the code was meant to prevent; and (4) the violation was the proximate cause of the injury or damage. *See Bills*, 547 N.W.2d at 695.

■■■■ Ordinarily, we would separately examine whether there were disputed facts under each claim and make a ruling on whether summary judgment was appropriate. In this case, however, a remand to the district court is more appropriate.

While the correct legal standard appears to have been applied with respect to negligence per se, we remand because the lower courts did not apply the correct legal standard to the Gradjelicks' separate ordinary negligence claims. Therefore, rather than rule only on part of the Gradjelicks' total claims, we remand for application of the correct legal standards in light of the facts alleged.

Reversed and remanded to the district court for further proceedings in accordance with this opinion.