Eunice TANEY, et al., Respondents,

v.

**INDEPENDENT SCHOOL DISTRICT NO. 624, Appellant.**

No. A03–370.

Court of Appeals of Minnesota.

Jan. 13, 2004.

**500**

Scott Ballou, Patrick M. Biren, Brownson & Ballou, P.L.L.P., Minneapolis, MN, for appellant.

Kermit N. Fruechte, Richard L. Carlson, Hunegs, Stone, LeNeave, Kvas & Thorton, P.A., Minneapolis, MN, for respondents.

Considered and decided by KLAPHAKE, Presiding Judge; WILLIS, Judge; and ANDERSON, Judge.

**OPINION**

G. BARRY ANDERSON, Judge.

Respondent, Eunice Taney, brought a personal injury action against appellant, Independent School District No. 624(ISD). After a two-day jury trial, ISD moved for a directed verdict on the issue of negligence. The district court denied the motion. The jury returned a special verdict finding both parties causally negligent; the jury apportioned fault for the accident at 32% for Taney and 68% for ISD.

■ After the district court ordered judgment, ISD brought post-trial motions seeking judgment notwithstanding the verdict (JNOV), or in the alternative, a new trial. ISD also asserted that Taney was barred from using a negligence theory because the statute of limitations [1] pertaining to improvements to real property, Minn. Stat. § 541.051 subd. 1 (2002), had expired.

The district court denied ISD's motions and this appeal follows.

**FACTS**

On December 15, 1998, Taney and her daughter-in-law attended Taney's granddaughter's choir program at Sunrise Park Middle School (Sunrise). ISD owns and operates Sunrise. Sunrise was built in 1958. In 1992, in order to comply with the building code so that ISD could use Sunrise as a middle school, ISD remodeled the building. On November 5, 1993, the city of White Bear Lake's Department of Building Inspection issued a certificate of occupancy that stated, "[A]t the time of issuance [Sunrise] was in compliance with the various ordinances of the city regulating building construction or use."

The evening of December 15, 1998, was Taney's first visit to Sunrise. On that night, ISD blocked off two of Sunrise's three hallways; the third hallway led directly to the gymnasium where the concert was held. But there were neither signs nor guides directing visitors to the choir program. Taney and her daughter-in-law

---

1. Although the parties' briefs refer to the issue of the 'statute of limitations,' in this case, the potential limitation on the action is more properly referred to as a 'statute of repose.' A statute of limitation is distinguishable from a statute of repose because

 [w]hile statutes of limitation are sometimes called "statutes of repose," the former bars right of action unless it is filed within a specified period of time after [the] injury

occurs, while "statute of repose" terminates any right of action after a specific time has elapsed, regardless of whether there has as yet been an injury.

*Black's Law Dictionary* 927 (6th ed.1990); *see also Hodder v. Goodyear Tire & Rubber Co.,* 426 N.W.2d 826, 830 (Minn.1988) (distinguishing statutes of limitation from statutes of repose).

searched Sunrise for several minutes without finding the concert.

Taney and her daughter-in-law then came to a set of glass double-doors that led into an interior courtyard. Through the glass doors, Taney could see lights and people in the hallway on the other side of the courtyard, so Taney assumed that the concert was on the other side of the courtyard.

Taney pushed open one of the doors to the courtyard and stepped outside. Taney testified that when she opened the door and stepped outside the lights and the people in the hallway across the courtyard distracted her. At the threshold of the door was a nine-inch drop-off; Taney stepped through the door, fell as a result of the drop-off, and broke her hip when she landed on the ground. Taney's hip injury required surgery.

The weather on the night of Taney's fall was temperate; there was no snow on the ground. The courtyard is two hundred feet long and eighty feet wide; it does not have a sidewalk or artificial lighting, but on the night of the accident, some light from inside the building illuminated the yard.

At trial, Taney's expert witness, an architect, testified that (1) the nine-inch drop-off outside the doors violated the Uniform Building Code; (2) the sudden drop-off was a safety hazard because people do not expect such a steep drop-off outside doorways; (3) the sudden drop-off should have provided warning of the hazard to ISD, therefore, ISD should have had warning signs at the doors; (4) the door Taney opened was equipped with a "panic bar," which is hardware that is required on all exit doors of Sunrise; (5) the doors cannot be locked; and, (6) the "panic bar" doors to the courtyard were installed in a remodeling project in 1992.

ISD admits that during the 1992 remodeling project, it replaced the old interior doors at Sunrise with the "panic bar" door that Taney opened. But ISD contends that remodeling projects at the school have never changed the elevation of the step where Taney fell. Further, ISD argues that between the remodeling project in 1992, and Taney's accident in 1998, no one had been injured while stepping into the courtyard, and ISD had not received any complaints about the drop-off into the courtyard.

At the close of evidence, ISD moved for a directed verdict on the issue of negligence based on a violation of the Uniform Building Code; the district court denied the motion. Thereafter, ISD requested a jury instruction that the jury could not consider evidence of a building code violation as evidence of negligence; the district court denied this request. The district court did, however, instruct Taney's counsel that, during closing arguments, he could not argue that a violation of the Uniform Building Code was evidence of negligence. The district court did allow Taney's counsel to argue that Taney's expert witness based his determination that ISD was negligent on his training and forty years of experience.

ISSUES

I. Was the evidence sufficient to support the jury's finding of negligence?

II. Were Taney's claims against ISD barred by Minn.Stat. § 541.051 subd. 1, the statute of repose pertaining to improvements to real property?

III. Did the district court abuse its discretion when it refused to issue an instruction that the jury could not consider violations of the Uniform Building Code in determining whether ISD was negligent?

## ANALYSIS

### Standard of review for JNOV

■ This court reviews the denial of a motion for JNOV de novo. *Pouliot v. Fitzsimmons,* 582 N.W.2d 221, 224 (Minn. 1998). But where the district court has denied JNOV, the appellate court must affirm the denial "if, in the record, 'there is any competent evidence reasonably tending to sustain the verdict.'" *Id.* (quoting *Rettman v. City of Litchfield,* 354 N.W.2d 426, 429 (Minn.1984)). Further, the reviewing court views the evidence in the light most favorable to the prevailing party; this court will not set aside the verdict if it is sustainable on "any reasonable theory of the evidence." *Fitzsimmons,* 582 N.W.2d at 224. In fact, the evidence must be practically conclusive that the verdict was incorrect in order for this court to set that verdict aside. *Id.*

### Standard of review for granting a new trial

Rule 59 of the Minnesota Rules of Civil Procedure governs motions for a new trial. According to Rule 59:

**Rule 59.01. Grounds**

A new trial may be granted to all or any of the parties and on all or part of the issues for any of the following causes: (a) Irregularity in the proceedings of the court, referee, jury, or prevailing party, or any order or abuse of discretion, whereby the moving party was deprived of a fair trial;

. . .

(g) The verdict, decision, or report is not justified by the evidence, or is con-

trary to law; but, unless it be so expressly stated in the order granting a new trial, it shall not be presumed, on appeal, to have been made on the ground that the verdict, decision, or report was not justified by the evidence.

■ The district court has the discretion to grant a new trial, and this court will not disturb that decision absent a clear abuse of discretion. *Halla Nursery, Inc. v. Baumann–Furrie & Co.,* 454 N.W.2d 905, 910 (Minn.1990). On appeal, the verdict will not be disturbed "unless it is manifestly and palpably contrary to the evidence, viewed in a light most favorable to the verdict." *ZumBerge v. N. States Power Co.,* 481 N.W.2d 103, 110 (Minn. App.1992), *review denied* (Minn. Apr. 29, 1992).

## I.

■ Possessors of land owe entrants a duty to exercise reasonable care in maintaining that land. *Peterson v. Balach,* 294 Minn. 161, 174, 199 N.W.2d 639, 647 (1972). Further, possessors of land have an ongoing duty to inspect and maintain their property so that unreasonably dangerous conditions will be discovered; the possessor then must either remedy the condition or provide entrants adequate warning of the condition. *See Bonniwell v. St. Paul Union Stockyards Co.,* 271 Minn. 233, 238, 135 N.W.2d 499, 502–503 (1965).

■ Landowners generally do not owe entrants a duty to warn or protect them from risks that are open and obvious.[2] *Wiseman v. N. Pac. Ry. Co.,* 214

---

**2.** Appellant argues that the Minnesota Supreme Court set forth the test for an "obvious" condition in *Munoz v. Applebaum's Food Market, Inc.,* 293 Minn. 433, 434, 196 N.W.2d 921, 922 (1972). In *Munoz,* appellant slipped in a pool of water in respondent's store and was injured. *Id.* at 921. The pool of water

was 20 feet square and a quarter of an inch deep. *Id.* at 921–22. Further, all the witnesses, except appellant, conceded that the pool was in plain view. *Id.* The Minnesota Supreme Court held, in light of these facts, that "the test is not whether the injured party actually saw the danger, but whether it was in

Minn. 101, 107, 7 N.W.2d 672, 675 (1943). Landowners must, however, protect entrants from dangerous conditions on the land, even open and obvious conditions, if there is a reasonable expectation that the entrant's attention will be distracted from the danger. *Lincoln v. Cambridge–Radisson Co.*, 235 Minn. 20, 23, 49 N.W.2d 1, 3 (1951). In fact, "where there is some distraction or other reason which will excuse the failure to see that which is in plain sight, it can be said that a person has exercised that degree of care required of an ordinarily prudent person." *Krengel v. Midwest Automatic Photo, Inc.*, 295 Minn. 200, 206, 203 N.W.2d 841, 845 (1973) (holding three defendants jointly liable for injuries sustained by respondent who tripped over a one and a quarter inch riser in a photo booth). Further, a condition that is obvious during the day may not be obvious at night. *See Betzold v. Sherwin*, 404 N.W.2d 286, 289 (Minn.App.1987) (holding that an open stairwell that was visible during the day was not an open, obvious, and dangerous condition in the darkness), *review denied* (Minn. June 25, 1987).

■ Here, the jury found that ISD negligently cared for and maintained Sunrise. The jury found that this negligence was the direct cause of Taney's accident on December 15, 2003. In light of the facts presented at trial, including: (1) that Taney had never been at Sunrise before; (2) that ISD did not place signs directing visitors to the concert; (3) that ISD did not have personnel available to direct visitors to the concert; (4) that there was a nine-inch drop-off outside the doors; (5) that ISD did not either repair the drop-off or affix a sign warning visitors of the drop-off outside the doors; and (6) that Taney's

attention was directed at the lights and people across the courtyard, it was not unreasonable for the jury to conclude either that (a) the nine-inch drop-off was an open and obvious dangerous condition, but that Taney's attention was distracted from the danger, or (b) that the nine-inch drop-off, which would have been open and obvious to Taney during the day, was not obvious at night. Because Taney set forth a reasonable theory of ISD's negligence and because the evidence in the record was "competent evidence reasonably tending to sustain the verdict," the district court correctly denied ISD's motion for JNOV. *See Fitzsimmons*, 582 N.W.2d at 224.

II.

Minn.Stat. § 541.051 subd. 1 provides, in pertinent part:

> No action by any person in … tort.. for bodily injury … arising out of the defective and unsafe condition of an improvement to real property.. shall be brought against … the owner of the real property more than two years after discovery of the injury … nor, in any event shall such a cause of action accrue more than ten years after substantial completion of the construction. Date of substantial completion shall be determined by the date when construction is sufficiently completed so that the owner or the owner's representative can occupy or use the improvement for the intended purpose.

Here, appellant argues that the ten-year statute of repose on the "improvement to real property" has run because the entrance to the courtyard has not been remodeled or improved since Sunrise was

---

fact visible." *Id.* at 922. *Munoz* is easily distinguishable from the present case because (1) the dangerous condition that Taney encountered was far less obvious than the dangerous condition in *Munoz*; and (2) *Munoz* lacked the element of the "distracting circumstance" found in this case.

built in 1958. Essentially, appellant contends that even though ISD replaced the interior doors leading to the courtyard, the drop-off into the courtyard is not part of the doorway, but rather, part of the courtyard.

Respondent argues that the drop-off outside the double-doors is part of the doorway where the accident occurred. Respondent contends that the 1992 remodeling, that included the installation of the "panic bar" doors, constituted an improvement of the entryway to the courtyard. Respondent argues that the statute of limitations and the ten-year statute of repose should run from the 1992 remodeling date rather than the year of original construction.

■■■ The Minnesota Supreme Court defines an improvement to real property as:

[A] permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs.

*Kloster–Madsen, Inc. v. Tafi's, Inc.,* 303 Minn. 59, 63, 226 N.W.2d 603, 607 (1975) (quoting *Webster's Third New International Dictionary,* p. 1138 (1971)) (deciding the meaning of "improvement" in the context of mechanic liens); *see also Pac. Indem. Co. v. Thompson–Yaeger, Inc.,* 260 N.W.2d 548, 554 (Minn.1977) (applying the same definition of "improvement" in the context of Minn.Stat. § 541.051)).

■■■ This court has expanded on the high court's definition of an improvement, holding "that in order for an improvement to be a permanent addition to or betterment of real property, it must be integral to and incorporated into the building or structure on the property." *Ritter v. Ab-*

*bey–Etna Mach. Co.,* 483 N.W.2d 91, 93 (Minn.App.1992) (citing In *Sartori v. Harnischfeger Corp.,* 432 N.W.2d 448 (Minn. 1988)), *review denied* (Minn. June 10, 1992). Although there is no Minnesota case law that directly addresses the issue of whether remodeling constitutes an improvement to real property, a survey of extant precedent in the area of improvement indicates that remodeling does, indeed, rise to the level of "improvement." *See generally, Sartori,* 432 N.W.2d at 452 (concluding that overhead rail crane at a mining facility constituted an improvement); *Capitol Supply Co. v. City of St. Paul,* 316 N.W.2d 554, 555 (Minn.1982) (concluding implicitly that a storm sewer system constituted an improvement); *Pacific Indem.,* 260 N.W.2d at 554 (holding that the installation of a furnace constituted an improvement to real property); *Horvath v. Liquid Controls Corp.,* 455 N.W.2d 60, 63 (Minn.App.1990) (holding that a change in an excess flow valve was "a design change in an improvement to real property"), *review denied* (Minn. July 13, 1990); *Citizens Sec. Mut. Ins. Co. v. Gen. Elec. Corp.,* 394 N.W.2d 167, 170 (Minn.App.1986) (holding that the installation of light fixtures constituted an improvement), *review denied* (Minn. Nov. 26, 1986); *Kemp v. Allis–Chalmers Corp.,* 390 N.W.2d 848, 850–51 (Minn.App.1986) (concluding that electrical transformer at industrial plant constituted an improvement). We conclude that for the purposes of Minn.Stat. § 541.051, the substantial remodeling of real property in the direct vicinity of an accident constitutes an improvement, not a repair, to that property.

■■■ In 1992, ISD remodeled Sunrise to bring the building up to code so that ISD could use Sunrise as a school. Because the 1992 remodeling, including the installation of the "panic bar" doors in the entryway to the courtyard, was a perma-

nent, integral addition that: (1) enhanced the capital value of Sunrise; (2) involved the expenditure of both labor and money to complete; and, (3) was designed to make the property more useful and valuable by bringing it up to code, the statute of repose for improvements to real property began running in 1992, and at the date of the incident in 1998, had not yet expired. *See Kloster–Madsen*, 303 Minn. at 63, 226 N.W.2d at 607 (quotation omitted); *Ritter*, 483 N.W.2d at 93. Taney's suit was, therefore, timely under Minn.Stat. § 541.051, subd. 1.

### III.

■■■■ District courts are allowed considerable latitude in selecting the language of jury instructions. *Alholm v. Wilt*, 394 N.W.2d 488, 490 (Minn.1986). This court will not reverse a district court's decision unless the instructions constituted an abuse of discretion. *See id.* (concluding that appellant failed to demonstrate that the district court's instructions were an abuse of discretion). In fact, where instructions fairly and correctly state the applicable law, an appellate court will not grant a new trial. *Alevizos v. Metro. Airports Comm'n*, 452 N.W.2d 492, 501 (Minn.App.1990), *review denied* (Minn. May 11, 1990). Further, even if this court finds error in the district court's instructions, we will not reverse unless the error is prejudicial. *Lewis v. Equitable Life Assurance Soc'y of the United States*, 389 N.W.2d 876, 885 (Minn.1986).

Here, rather than affirmatively challenging an erroneous instruction, ISD challenges the district court's refusal to give an instruction that ISD requested. ISD contends that *Bills v. Willow I Apartments* entitled ISD to an instruction that the jury could not consider testimonial evidence that ISD violated the Uniform Building Code as evidence of ISD's negligence.[3] *See* 547 N.W.2d 693 (Minn.1996). But ISD's reliance on *Bills* is misplaced; *Bills* does not address the issue of jury instructions. Instead, *Bills* discusses a landlord's alleged violations of the Uniform Building Code and whether such violations were evidence of negligence per se. *Id.* at 694. *Bills* concludes that a plaintiff may not establish a defendant's negligence per se if the plaintiff fails to offer evidence that (1) defendant has notice of the building code violation; (2) defendant has failed to take reasonable steps to remedy that violation of the building code; (3) the legislature designed that building code to prevent the type of injury the plaintiff suffered; and, (4) the violation in question is the proximate cause of the accident. *Id.* at 695.

Here, the district court did not abuse its discretion by refusing to instruct the jury that ISD's violation of the Uniform Building Code did not constitute negligence. Because the district court's instructions fairly and correctly stated the duties of landowners to entrants and the law of negligence in Minnesota, we affirm the district court's decision, and deny ISD's request for a new trial. *See Alevizos*, 452 N.W.2d at 501.

### DECISION

Because the record supports the jury's finding of negligence, we affirm the district

---

**3.** At oral argument before this court, respondent's attorney argued that, under Minnesota law, the district court should have permitted him to argue to the jury that evidence of a building code violation could be considered in the negligence analysis. But because respondent did not file a notice of review on the issue, we decline to reach the merits of that argument here. *See* Minn. R. Civ.App. R. 106 (stating respondent may obtain review of district court ruling by filing notice of review); *Arndt v. Am. Family Ins. Co.*, 394 N.W.2d 791, 793 (Minn.1986) (affirming this court's refusal to address issue raised by respondent where respondent failed to file a notice of review).

court's denial of ISD's motion for JNOV. Further, because we hold that the substantial remodeling here is an improvement to real property, we affirm the district court's determination that Minn.Stat. § 541.051 subd. 1, the statute of repose governing Taney's action for personal injury, had not expired at the time of her fall. Finally, because the district court's instructions fairly and correctly stated the law, we deny ISD's motion for a new trial.

**Affirmed.**