**Estelle BUSCH, Appellant,**

v.

**MODEL CORPORATION,
et al., Respondents.**

No. A05–426.

Court of Appeals of Minnesota.

Jan. 10, 2006.

Estelle Busch, Minneapolis, MN, pro se appellant.

Joseph Shun, New Brighton, MN, pro se respondent.

Considered and decided by DIETZEN, Presiding Judge; RANDALL, Judge; and PETERSON, Judge.

## OPINION

DIETZEN, Judge.

Appellant challenges the district court judgment awarding respondent $5,000 in damages for breach of contract, arguing that the district court erred in not requiring respondent to refund $5,000 paid on a contract to build a garage for failure to comply with Minn.Stat. §§ 325G.06 to 325G.11 (2004) (the home solicitation sale statute). Because the home solicitation sale statute excludes contracts for the sale of real property, which includes improvements to real property, we reverse the district court's determination that the parties' contract constituted a home solicitation sale; however, because the parties' mutually rescinded the contract and appellant retained a benefit from respondent, we affirm the district court judgment in favor of respondent.

## FACTS

Appellant Estelle Busch is the owner of residential property located in Minneapolis, Minnesota. In April 2002, appellant and respondent Joseph Shun, a residential construction contractor operating as Model Corporation, entered into a written contract regarding the construction of a new garage on appellant's property.

Respondent agreed to obtain a city permit; remove the old garage, driveway and sidewalk; excavate and grade a new pad for the garage; pour new concrete for the driveway and sidewalk; and construct a new garage. Appellant agreed to pay respondent a contract price of $14,900 in three installments: (1) $5,000 as down payment (Phase I); (2) $5,000 "after concrete" (Phase II); and (3) the balance upon completion (Phase III). Upon signing the contract, appellant paid respondent the $5,000 down payment.

Respondent commenced work on the project. But numerous disagreements between the parties ensued, particularly regarding the due date of the Phase II payment. After completion of the demolition and removal of the old garage, and the pouring of the concrete, appellant refused to make the Phase II payment, arguing that the concrete work was not done in accordance with acceptable standards and, therefore, respondent failed to complete the Phase I concrete work. Respondent asserted that he completed the work contemplated by Phase I of the contract and demanded the Phase II payment before progressing further on the project.

As a result of appellant's continued refusal to pay, respondent stated his intention to terminate the contractual relationship. Then, appellant sent a letter to respondent canceling the contract and demanding return of the $5,000 down payment. Appellant then entered into a contract with a new company to complete the project for $13,500. When respondent refused to return the down payment, appellant filed a lawsuit in conciliation court. The conciliation court found in favor of appellant and awarded her $3,600 in damages. Respondent appealed the award to the district court.

At trial, the parties appeared pro se and stipulated to certain facts, including that respondent obtained a building permit, removed the old garage and garage slab, excavated the rubble, and poured concrete for the new garage. Appellant testified that she was entitled to return of the $5,000 down payment because respondent violated the "home solicitation sale" statute; and that respondent's concrete work was below acceptable standards. Both parties testified that the negotiations and the execution of the contract occurred at appellant's home. Appellant also testified that respondent failed to notify her of the right to cancel the contract, or provide her with a notice of cancellation form as required by the statute.

To support her claim that the concrete work was below acceptable standards, appellant presented photographs and the testimony of her son, a civil engineer. Appellant admitted that the new company was able to use the concrete slab poured by respondent to complete the project. Respondent provided an accounting of his costs for the work that was completed, which totaled $6,565. Appellant did not provide evidence to refute these costs.

Following trial, the district court entered its order for judgment, concluding that the contract between the parties constituted a "home solicitation sale" and that respondent failed to comply with the statute by neither informing appellant of the right to cancel or providing her with a notice of cancellation form as required by the statute. The district court also concluded that appellant was not entitled to damages because the benefit received by appellant from respondent's work exceeded the cost of the down payment; and appellant failed to prove damages. This appeal follows.

## ISSUES

I. Did the parties' contract constitute a "home solicitation sale," entitling appellant to statutory redress?

II. Did the district court err in entering judgment for respondent?

## ANALYSIS

### I.

Appellant first argues that the contract to build a garage is covered by Minn.Stat. §§ 325G.06–.11 (2004), the home solicitation sale statute. Appellant contends that, because respondent failed to comply with the statutory notification requirements,

she is entitled to a refund of the $5,000 paid for Phase I of the project. Although respondent failed to file a brief, we will determine the case on the merits. Minn. R. Civ.App. P. 142.03.

■ Statutory interpretation presents a question of law, which this court reviews de novo. *Eischen Cabinet Co. v. Hildebrandt*, 683 N.W.2d 813, 815 (Minn.2004). In Minnesota, consumer protection statutes have been enacted to protect a buyer in a "home solicitation sale." Minn.Stat. § 325G.06, subd. 2. A "home solicitation sale" is defined as:

[A] a sale of goods or services, by a seller who regularly engages in transactions of the same kind, purchased primarily for personal, family or household purposes, and not for agricultural purposes, with a purchase price of more than $25, in which the seller or a person acting for the seller personally solicits the sale, and when the buyer's agreement or offer to purchase is made at a place other than the place of business of the seller.

*Id.*

The primary protections afforded to a buyer in a home solicitation sale relate to the seller's obligation to notify the buyer of the right to cancel the sale. *Id.* § 325G.07. The statute requires that notice be provided orally; through specific statutory language in the contract; and by a notice of cancellation form. *Id.* § 325G.08, subd. 1. Until a seller has complied with the notice requirements, the buyer is free to cancel the home solicitation sale at any time and the seller must return any payments previously made by the buyer. *Id.* § 325G.09, subd. 1(a)-(c).

But the home solicitation statutes provide various exceptions from the definition of a home solicitation sale, including sales of "real property." *Id.* § 325G.06, subd. 2(e). Although the statutes do not pro- vide a definition of "real property," other Minnesota statutes define the term. *See, e.g.,* Minn.Stat. §§ 272.03, subd. 1 (2002) (taxation); § 256J.08, subd. 74 (2002) (welfare); § 398A.01, subd. 7 (2002) (regional railroad authorities); § 469.002, subd. 20 (2002) (housing and redevelopment authorities); § 471.656, subd. 3(e) (2002) (municipal bonds). These statutes uniformly define "real property" as including improvements to real property. *Id.* "As a matter of statutory construction, we presume that the legislature uses the same words the same way, even in different statutes." *Stansell v. City of Northfield*, 618 N.W.2d 814, 819 (Minn.App. 2000). Therefore, we may reasonably conclude that the legislature intended the term "real property" in Minn.Stat. § 325G.06 to include improvements to such property.

■ An improvement to real property is defined as "a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs." *Pacific Indem. Co. v. Thompson–Yaeger, Inc.*, 260 N.W.2d 548, 554 (Minn.1977) (citation omitted). This court has interpreted an improvement to real property to include remodeling, *Taney v. Indep. Sch. Dist. No. 624*, 673 N.W.2d 497, 504 (Minn.App.2004); installation of a furnace, *Pacific Indem. Co.*, 260 N.W.2d at 554; installation of light fixtures, *Citizens Sec. Mut. Ins. Co. v. Gen. Elec. Corp.*, 394 N.W.2d 167, 170 (Minn.App.1986), *review denied,* (Minn. Nov. 26, 1986); installation of electrical equipment and wiring in a barn, *Johnson v. Steele–Waseca Coop. Elec.*, 469 N.W.2d 517, 519 (Minn.App. 1991), *review denied* (Minn. July 24, 1991); and excavation as part of the process of building an attached garage and basement.

*Fiveland v. Bollig & Sons, Inc.*, 436 N.W.2d 478, 480–81 (Minn.App.1989), *review denied* (Minn. Apr. 24, 1989).

■ Here, the parties contracted for the removal of appellant's old garage and construction of a new garage. A new garage is a permanent fixture that enhances the value of appellant's property. *See Pacific Indem. Co.*, 260 N.W.2d at 554. Thus, we conclude that the construction project of a new permanent garage constituted an "improvement" to real property, and the contract for such construction falls within the "sales of real property" exception to the home solicitation sale statute. *See* Minn. Stat. § 325G.06, subd. 2(e). Consequently, the district court erred in concluding that that parties' contract constituted a home solicitation sale; and respondent was not required to comply with the home solicitation statute's notification requirements.

## II.

Appellant contends that respondent breached the contract by performing concrete work below acceptable standards, and by demanding the second payment prior to completion of Phase I; therefore, appellant is entitled to a refund of the $5,000 down payment.

■ On appeal from a judgment where no motion for a new trial was made, "appellate review is limited to examining whether the evidence supports the findings of fact and whether those findings support the conclusions of law." *Schweich v. Ziegler, Inc.*, 463 N.W.2d 722, 730 (Minn.1990) (citation omitted). Appellate courts view the record in the light most favorable to the district court's judgment and will not disturb the district court's findings if there is reasonable evidence to support them. *Rogers v. Moore*, 603 N.W.2d 650, 656 (Minn.1999) (citation omitted). However, we review questions of law de novo. *Alpha Real Estate Co. of Rochester v. Delta Dental Plan of Minnesota*, 664 N.W.2d 303, 311 (Minn.2003).

■ When a material breach of contract occurs, the nonbreaching party may elect to either affirm or rescind the contract. *See Loppe v. Steiner*, 699 N.W.2d 342, 349 (Minn.App.2005). If an injured party affirms the contract, damages are awarded with the purpose of putting the injured party in the position he would have occupied had the contract been fully performed by the other party. 11 Arthur L. Corbin, *Corbin on Contracts* § 996 (1964). If a party rescinds the contract, recovery is based on restoring the injured party to the position occupied before the contract was made. *Id.*

■ Rescission is an equitable remedy that seeks to put the parties "in the same position they would have been had the contract never existed." *Johnny's, Inc. v. Njaka*, 450 N.W.2d 166, 168 (Minn. App.1990). Both parties to a bilateral contract may rescind the contract if each demonstrates intent to rescind and there is mutual assent. *Abdallah, Inc. v. Martin*, 242 Minn. 416, 421–22, 65 N.W.2d 641, 645 (1954). Mutual assent to rescind a contract may be inferred from the attendant circumstances and conduct of the parties. *Id.* at 422, 65 N.W.2d at 645. If there is mutual rescission, the parties must return any benefit received under the contract and put the other party as nearly as is possible in his or her situation before the contract. *See MCC Invs. v. Crystal Props.*, 415 N.W.2d 908, 911 (Minn.App. 1987), *review denied* (Minn. Feb. 12, 1988).

■ Here, the district court did not find that respondent breached the contract, and the record supports this finding. Respondent's concrete work was incorporated by the new company into the project and, therefore, provided a benefit to appellant. Consequently, respondent was

entitled to the Phase I payment and his refusal to cease further performance was justified, and not in breach of the agreement. And appellant's subsequent letter "canceling" the contract acknowledges respondent's refusal to perform and clearly states her own intent to rescind. Therefore, the parties' mutual rescission disaffirms the contract, and the parties must return any benefit received under the contract and return the other party to the pre-contract status quo. *Id.* at 911.

The district court found that appellant acquired a benefit from respondent, which exceeded appellant's $5,000 down payment. The evidence supports the district court's finding. Respondent introduced an accounting of the costs of the completed portion of the project, which totaled $6,565. Appellant did not controvert these costs.

Because of the nature of the benefit received, i.e., labor and materials incorporated into the completed project, appellant is unable to return the benefit. To allow appellant to retain the benefit would be a windfall to her and would fail to restore the parties to the status quo. Consequently, the district court did not err by entering judgment in favor of respondent for $5,000.

The district court's judgment is also supported by the equitable principle of quantum meruit. A party may recover under quantum meruit where he or she has conferred a benefit to another and has not received reasonable compensation for this act. *See, e.g., Frankson v. Design Space Int'l,* 394 N.W.2d 140, 145 (Minn. 1986). Under quantum meruit, the measure of recovery for a partially completed project is "the reasonable value of the fraction of the project that was completed." *E.C.I. Corp. v. G.G.C. Co.,* 306 Minn. 433, 437, 237 N.W.2d 627, 630 (Minn.1976). Determination of the "reasonable value"

can be based on the contract price, even though recovery is sought in equity. *Confer Bros. v. Currier,* 164 Minn. 207, 210, 204 N.W. 929, 931 (Minn.1925). Here, the contract price for Phase I was $5,000, thus providing a reasonable value of the portion of the project that respondent completed. Therefore, the district court judgment in favor of respondent for that amount was also proper under quantum meruit.

## DECISION

Because the home solicitation sale statute excludes contracts for the sale of real property, which includes improvements to real property, we reverse the district court's determination that the parties' contract constituted a home solicitation sale; however, because the record supports the district court's judgment in favor of respondent, appellant is not entitled to return of the $5,000 payment.

**Affirmed in part and reversed in part.**