Donald D. DANIELSON,
et al., Appellants,

v.

**CITY OF BROOKLYN PARK,**
**Minnesota, Respondent.**

No. C5–93–2228.

Court of Appeals of Minnesota.

May 17, 1994.

Review Denied July 27, 1994.

James S. Ballentine, Michael D. Tewksbury, Schwebel, Goetz, Sieben, P.A., Minneapolis, for appellants.

John J. Brossart and Lawrence R. King, King and Hatch, St. Paul, for respondent.

Considered and decided by NORTON, P.J., and HUSPENI and MULALLY, JJ.*

## OPINION

HUSPENI, Judge.

Donald and Ruby Danielson challenge the trial court's award of summary judgment to the City of Brooklyn Park (City). Because we agree with the trial court that the City owed no special duty to the Danielsons that would render it liable for any negligence based upon the City's incorrect determination that the Danielsons' tree was infected with Dutch Elm disease, we affirm.

## FACTS

The facts in this case are undisputed. A City employee notified the Danielsons that a tree on their property was infected with Dutch Elm disease and, pursuant to a City ordinance, ordered the Danielsons to remove the tree. The employee did not advise the Danielsons as to the recommended method of removal, nor did they seek such advice.

Some time after being notified that the tree must be removed, Donald Danielson placed a 22–foot extension ladder on top of his van and, carrying a chain saw, climbed the ladder and began to cut branches from the tree. Danielson fell head-first onto the ground from a height of approximately 35 to 40 feet and sustained severe and permanent head injuries.

After the accident, the Danielsons sought professional opinions as to whether the City's diagnosis of Dutch Elm disease was in error. These opinions indicated that the tree most likely did not have Dutch Elm disease. The Danielsons sued the City, contending that the City was negligent because it incorrectly

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

diagnosed the tree with Dutch Elm disease and ordered its removal.

This appeal resulted from the trial court's award of summary judgment in favor of the City.

## ISSUE

Did the City owe a special duty of care to appellants?

## ANALYSIS

A trial court shall grant summary judgment if there are no genuine issues of material fact, and a party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03. Because there is no dispute as to the material facts here, we will review whether the trial court erred in its application of law. *See Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988).

■ As a general rule, one claiming negligence on the part of another has the burden of proving by a preponderance of the evidence the following elements:

(1) duty; (2) breach of that duty; (3) that the breach of duty be the proximate cause of plaintiff's injury; and (4) that plaintiff did in fact suffer injury.

*Hudson v. Snyder Body, Inc.*, 326 N.W.2d 149, 157 (Minn.1982) (quoting *Schmanski v. Church of St. Casimir of Wells*, 243 Minn. 289, 292, 67 N.W.2d 644, 646 (1954)).

■ The Danielsons' negligence claim rests on the City's incorrect diagnosis of Dutch Elm disease in the tree on their property. It is uncontested that under an ordinance the City has the authority to inspect and order removal of trees infected with Dutch Elm disease. *See* Brooklyn Park, Minn., Code of Ordinances §§ 1010:15, 20 (1979). A municipality, however, does not owe an individual a duty of care merely by enacting an ordinance in which it undertakes responsibility to perform inspections. *Cracraft v. City of St. Louis Park*, 279 N.W.2d 801, 806 (Minn.1979). We conclude that in this case the City, in enacting the ordinance at issue, did not undertake to protect a particular class of persons of which the Danielsons were members.

■ In *Hoffert v. Owatonna Inn Towne Motel, Inc.*, 293 Minn. 220, 222, 199 N.W.2d 158, 160 (1972), the supreme court determined that recovery against a municipality could be obtained only upon showing a breach of some duty owed to the litigants in their individual capacities and not merely a breach of some obligation owed to the general public. An individual duty of care arises when there is evidence that the municipality has undertaken the responsibility of protecting a particular class of persons from the risks associated with violation of an ordinance. *Cracraft*, 279 N.W.2d at 806.

In *Cracraft*, several children were injured or killed when a drum of duplicating fluid exploded on a school loading dock. *Id.* at 803. The *Cracraft* plaintiffs claimed that municipal employees negligently performed fire inspections required under an ordinance and thereby caused the injuries and deaths of the children. *Id.* In concluding that the municipality did not assume a special duty to plaintiffs as members of a particular class of persons to whom the municipality undertook the responsibility of protecting from risks associated with violation of the ordinance, the *Cracraft* court enunciated four nonexclusive factors which must be considered:

First, actual knowledge of the dangerous condition is a factor which tends to impose a duty of care on the municipality. Second, reasonable reliance by persons on the municipality's representations and conduct tends to impose a duty of care. Of course, reliance on the inspection in general is not sufficient. Instead, the reasonable reliance must be based on specific actions or representations which cause the persons to forego other alternatives of protecting themselves. Third, a duty of care may be created by an ordinance or statute that sets forth mandatory acts clearly for the protection of a particular class of persons rather than the public as a whole. Finally, the municipality must use due care to avoid increasing the risk of harm.

*Id.* at 806–07 (footnotes omitted).

We agree with the trial court that the Danielsons cannot meet the *Cracraft* factors. It was not the tree infected with Dutch Elm disease that created a dangerous condition;

the dangerous condition was created by the Danielsons in choosing the method of removing the tree. The Danielsons did not inform the City of their planned method of removing the tree, nor did any City employee advise or direct the Danielsons on how the tree was to be removed. The court cannot charge the City with actual notice of the method chosen by the Danielsons to remove the tree when no notice was provided to it, and constructive notice will not suffice. *Hage v. Stade*, 304 N.W.2d 283, 288, n. 2 (Minn.1981). The ordinance required only that the diseased tree be removed. The ordinance is silent on how that removal is to be accomplished.

The Danielsons cite the City's misdiagnosis and its order to remove the tree as being representations upon which they relied, and assert that *Smullen v. City of New York*, 28 N.Y.2d 66, 320 N.Y.S.2d 19, 268 N.E.2d 763 (1971), *cited in Cracraft*, 279 N.W.2d at 807 n. 9, supports their position. We disagree. Unlike in *Smullen*, 320 N.Y.S.2d at 24–25, 268 N.E.2d at 767, the City made no representations that the Danielsons would be safe in cutting down the tree in the manner attempted.

■ The Danielsons, in urging that they are members of a particular class of persons toward whom the City owes a special duty, cite the following language of the ordinance:

[I]t shall be the duty of any such owner promptly to remove or burn any such elm tree or dead elmwood *under the supervision and direction of the Manager of the City, or his duly authorized representative.*

Brooklyn Park, Minn., Code of Ordinances § 1010:10 (emphasis added). The Danielsons argue that the ordinance requires the City to exercise direct supervision and that by failing to do so, the City breached its private duty. The Danielsons contend that, to the extent that the meaning of "supervision and direction" is unclear, this court must remand for a factual determination by the trial court.

We conclude that the ordinance does not provide the protection the Danielsons seek.

To accept their interpretation would place an unreasonable burden on the City, requiring its 24–hour surveillance. We cannot perceive that burden to be the intent of the ordinance. Instead, we conclude that the ordinance was enacted for the public benefit to control the spread of Dutch Elm disease, not to protect a class of persons who, without the City's encouragement or advice, independently undertook to comply in a dangerous way.

In addressing whether the City used due care to avoid increasing the risk of harm, we note that any increase in that risk came not from a negligent act of the City under the ordinance, but from the acts of the Danielsons in choosing an unsafe method by which to comply with the order to remove the tree.

The Danielsons argue that *Cracraft* is inapplicable to the facts of this case because the court in *Cracraft* limited its analysis to a consideration of "the municipality's unique duty to enforce the law by taking steps to assure that third persons [the school] comply with the law." *Cracraft*, 279 N.W.2d at 803. The Danielsons, noting that no third person is present in this case and arguing that it was the City's own conduct that formed the basis of their complaint, contend that this case must be governed by the decision in *Gilbert v. Billman Constr., Inc.*, 371 N.W.2d 542 (Minn.1985).[1] We do not agree.

First, in *Gilbert* the court found that the county had assumed a direct duty by designing a septic system and requiring that it be constructed accordingly. *Id.* at 546. In order for *Gilbert* to apply here, the evidence would have to show that the City assumed a direct duty by requiring the Danielsons to remove the tree in the manner in which they did. The City gave no advice on the manner in which the tree should be removed and, therefore, *Gilbert* is clearly distinguishable.

Second, we find no merit in the Danielsons' argument that *Cracraft* must be limited to cases in which a third party is present. The absence of a third party in this case is irrelevant. It is the Danielsons' own negligence which ultimately caused their injury, not the City's actions. *Cracraft* is as fully applicable

1. The City contends that because the Danielsons are raising the *Gilbert* theory for the first time on appeal, this court should not address it. *See*

*Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988). We will address the issue, which is clearly related to *Cracraft*.

under these circumstances as it would be if a third party were involved.

We accept, in this case, that the City incorrectly diagnosed Dutch Elm disease in the Danielsons' tree. We conclude, nonetheless, as did the court in *Cracraft*, that because the ordinance in question was enacted for the benefit of the general public, and not for the benefit of a special class of which the Danielsons are members, the Danielsons cannot recover against the City for the injuries they suffered.

 The trial court also concluded that there was no causal relationship between the incorrect diagnosis and the injury which the Danielsons suffered. Instead, the trial court found that the cause of injury was the manner in which Donald Danielson attempted to cut down the tree. We agree. While it may be argued that but for the City's order based upon the misdiagnosis Danielson would not have suffered his injury, the misdiagnosis was not the cause of his injury. The Minnesota Supreme Court recently reiterated that this state does not use the "but for" test for causation. *See Harpster v. Hetherington*, 512 N.W.2d 585, 586 (Minn.1994). The trial court correctly ruled on the causation issue.

### DECISION

The City did not owe a special duty to appellants under the ordinance and summary judgment in favor of the City is affirmed.

**Affirmed.**