ALDERMAN'S INC., et al., Respondents,

v.

Robert SHANKS, d/b/a Shanks
Heating, Defendant,

Duane A. Roberts, d/b/a Roberts Drug
& Hallmark Card Shop, Appellant.

No. C4–93–1006.

Supreme Court of Minnesota.

Aug. 18, 1995.

Rehearing Denied Oct. 4, 1995.

Hugh J. Cosgrove, Cosgrove, Flynn & Gaskins, Minneapolis, for appellant.

Joseph F. Lulic, Margaret K. Ackerman, Hanson, Lulic & Krall, Minneapolis, for respondent.

**OPINION**

GARDEBRING, Justice.

This case requires us to interpret various provisions of the Uniform Fire Code (UFC) and determine its application in a negligence action resulting from a fire which caused considerable property damage, but no loss of life. Primarily, we are asked to determine whether a violation of the UFC constitutes negligence as a matter of law and if so, under what circumstances the UFC's grandfather clause precludes liability for nonconforming conditions in buildings that predate the code.

A fire started in Roberts Drug & Hallmark Card Shop and swept through neighboring property in downtown Brainerd. As a result, the adjoining property owners and tenants of Roberts Drug (the property owners) brought an action against the building owner for the fire damage.[1] At the close of the jury trial, the trial court submitted the issues of negligence and causation to the jury but did not give a negligence per se instruction relating to the violations of the UFC. The jury returned a special verdict finding no negligence. The court of appeals reversed and remanded the case for a new trial on the issue of liability. The court of appeals held that certain violations of the UFC constitute negligence per se and that the UFC grandfather clause does not apply where there is an absence of evidence to show the fire inspector affirmatively concluded that noncomplying conditions were not hazardous. We agree that certain violations of the UFC are negligence per se and that the trial court committed reversible error by not properly instructing the jury on the issue. Contrary to the court of appeals, however, we conclude that when a fire official conducts an inspection of a building built prior to 1975 and cites some nonconforming conditions, but does not cite other nonconforming conditions, the grandfather clause exempts the property owner from compliance with the provisions of the UFC not cited by the fire official.

Duane Roberts purchased the Roberts Drug building in 1972, prior to Minnesota's

1. Shanks Heating, the contractor responsible for servicing the boiler system in the Roberts build-

ing, was also sued. Shanks Heating is not a party to this appeal.

adoption of the UFC in 1975. The building, located in downtown Brainerd, was a two-story structure with apartments located upstairs, the Roberts Drug and Hallmark Card Shop housed on the main floor, and the boiler room in the basement. In August 1984, Brainerd Fire Chief Robert Hannon, who is the fire official responsible for enforcing the UFC in Brainerd, inspected the Roberts Drug building and issued a report citing several violations of the UFC, including the lack of a fire door in the boiler room. Following his citation, Chief Hannon returned to the Roberts Drug building on several occasions to determine if Roberts had rectified the cited violations. His last recorded visit to the building was in June 1985, at which time Roberts had rectified all but the fire door violation. Although Roberts had discussed alternatives to installing a fire door with Chief Hannon, no action was taken prior to the fire. On February 26, 1987, a fire started in the boiler room and swept through the rest of the building and neighboring property. The property owners brought an action against Roberts for fire damage to their property.

In addition to the lack of a fire door, it is undisputed that at the time of the fire Roberts was not in compliance with three other requirements of the UFC, specifically: 1) lack of fire stops in pipe chases; 2) lack of a fire resistant ceiling in the boiler room; and 3) lack of a sprinkler system in the basement. Chief Hannon neither cited these violations nor told Roberts that these three conditions violated the UFC. At trial, Chief Hannon testified that nonconforming conditions existing in a building such as Roberts Drug, which predates the UFC, are generally permitted to continue unless an enforcement officer issues an order telling the owner to correct the problem. He also testified that the enforcement of the fire code in old buildings is based primarily on economic considerations.

There was conflicting testimony at trial concerning whether the lack of compliance with the UFC increased the amount of damage or caused the fire to spread. Specifically, Chief Hannon testified that the absence of the fire door played an insignificant role in the spread of the fire. Chief Hannon did not testify as to the other three nonconforming conditions. By contrast, the property owners' expert, a certified fire inspector, testified that the absence of a basement sprinkler, a fire door, pipe chases and a fire-resistant ceiling in the boiler room contributed both to causing the fire and to increasing its severity.

The trial court instructed the jury on the application of the UFC to the issue of negligence as follows:

In the present case, the provisions of the Uniform Fire Code and the Uniform Building Code may have been operative as to the building owned by Duane Roberts. The construction of this building predated the enactment of the codes. These codes apply to premises constructed before its effective date only under certain enumerated circumstances, such as where a fire marshall or fire chief inspects the structure and gives notice to the landowner of any specific hazards.

As to any other conditions that existed at the time of the fire in Roberts' Drug, you may consider the Uniform Fire Code as a standard in determining whether the defendant Duane Roberts was negligent. But failure to comply with the Uniform Fire Code is not conclusive on the question of whether defendant Duane Roberts was negligent. Rather, it is to be considered by you along with all the other evidence in the case in deciding whether the defendant Duane Roberts was negligent.

The special verdict form required a two-step analysis. It asked whether Roberts was negligent, and if so, whether that negligence caused the fire. The jury found Roberts was not negligent; as a result, the issue of causation was never reached. The property owners moved for judgment notwithstanding the verdict on a theory that the UFC violations constituted negligence per se. Alternatively, the property owners moved for a new trial.[2]

---

**2.** The property owners' new trial motion had three bases: first, that the trial court erred in failing to grant the motion for a directed verdict

concerning the negligence of Roberts; second, that if Roberts was negligent as a matter of law, then a new trial was warranted for a determina-

In denying the post-trial motions, the trial court concluded that competent evidence reasonably supported the jury's verdict and that neither the outcome of the case nor the property owners were unfairly prejudiced or harmed as a result of any alleged error of law by the court. The court of appeals reversed and remanded for a new trial, concluding that violation of the UFC was negligence per se and that the grandfather clause did not apply on these facts.

Our decision turns on the interpretation of several UFC provisions.[3] Three sections of the main body of the UFC, along with Appendix I–A provisions, are at issue. First, we look at the general provision which articulates the overall objective and purpose of the UFC. UFC § 1.102 states, in part:

> It is the intent of this code to prescribe regulations consistent with nationally recognized good practice for the safeguarding to a reasonable degree of life and property from the hazards of fire and explosion arising from the storage, handling and use of hazardous substances, materials and devices, and from conditions hazardous to life or property in the use or occupancy of buildings or premises.[4]

Second, we must look at the specific UFC provisions with which the Roberts Drug building did not comply. UFC § 10.402(a) requires a fire door in the boiler room; § 10.401 requires fire stops in pipe chases; and § 10.309(b)(1) requires a sprinkler system in the basement. Third, we consider the UFC grandfather clause which, under certain circumstances, exempts property owners from compliance with UFC requirements. *See* UFC § 1.103(b). The interpretation and application of the grandfather clause presents an issue of first impression for this court.[5]

 The first issue we address is whether a violation of the substantive requirements of the UFC constitutes negligence per se. A long line of Minnesota cases establishes that violations of regulations or ordinances that are adopted pursuant to statutory authority can result in negligence per se. *See Pacific Indemnity Co. v. Thompson–Yaeger, Inc.*, 260 N.W.2d 548 (Minn. 1977); *Raymond v. Baehr*, 282 Minn. 109, 163 N.W.2d 51 (1968); *Lynghaug v. Payte*, 247 Minn. 186, 76 N.W.2d 660 (1956). In *Pacific Indemnity*, a case involving a state

---

tion of causation; and finally, that the trial court failed to give a proper jury instruction on negligence per se.

3. In 1974, the Minnesota Legislature provided statutory authority for the Department of Public Safety, Fire Marshal Division, to adopt a uniform fire code for the state. Minn.Stat. § 299F.011 (1974). In 1975, the fire marshal adopted the 1973 edition of the UFC and incorporated it by reference into the Minnesota Fire Code. *See* Minnesota Code of Agency Rules, Rules of the Department of Public Safety, ch. 4, § 31 (1982 reprint). In 1983, the fire marshal repealed the 1975 incorporation, substituting in its place an incorporation of the 1982 edition of the UFC, subject to the amendments in Minn.R. 7510.0200 to 7510.3000 (1983). *See* 7 Minn.Reg. 1431 (April 4, 1983) and Minn.R. 7510.0400 (1983). Thus, it is the 1982 edition of the UFC that is applicable in the present case.

4. We note also that Minn.R. 7510.0200 (1983) specifically reiterates this purpose:

> The purpose of parts 7510.0200 to 7510.3000 is to adopt uniform fire safety standards governing the maintenance of buildings and premises; regulate the storage, use, and handling of dangerous and hazardous materials, substances, and processes; and regulate the maintenance of adequate egress facilities.

5. In addition to these sections of the main body of the UFC, certain provisions of Appendix I–A of the UFC are also implicated. The purpose and application of Appendix I–A is expressed in § 1 as follows:

> (a) The purpose of this appendix is to provide a reasonable degree of safety to persons occupying existing buildings that do not conform with the minimum requirements of this code by providing for alterations to such existing buildings.
> (b) Within 18 months after the effective date of this appendix, plans for compliance shall be submitted and approved, and within 18 months thereafter the work shall be completed or the building shall be vacated until made to conform.

Thus, Appendix I–A is a separate and independent section which is specifically applicable, within three years of the effective date, to buildings existing at the time the code was adopted and specifically directed toward minimum life safety requirements. The Appendix I–A provisions that Roberts violated, § 3 (lack of fire stops in pipe chases) § 4 (lack of sprinkler system in basement) and § 7 (lack of fire door), are nearly identical to the substantive requirements of the main body of the UFC which Roberts violated at the time of the fire.

law limiting tort recovery in cases involving improvements to real property, specifically the installation of heating systems, we articulated a two-part test to determine whether violation of a statute or ordinance constitutes negligence per se.

It is well settled that breach of a statute gives rise to negligence per se if the *persons harmed by that violation are within the intended protection of the statute* and the *harm suffered is of the type the legislation was intended to prevent*. The statute or ordinance imposes a fixed duty of care, so its breach constitutes conclusive evidence of negligence.

*Pacific Indemnity Co.*, 260 N.W.2d at 558–559 (citations omitted) (emphasis added).[6] Further, the general rule is that violation of a statute which imposes a standard of conduct designed to protect the party injured is negligence per se unless the statute or ordinance designates that a breach is only prima facie evidence of negligence. *Butler v. Engel*, 243 Minn. 317, 322, 68 N.W.2d 226, 230 (1954). As a result, a violation of the UFC can constitute negligence per se if the well established two-part test is satisfied.

However, Roberts argues that he is exempt from liability because the nonconforming conditions at issue here came within the grandfather clause of the UFC, and thus were not violations of the UFC at all. Therefore, he contends the nonconforming conditions could not constitute negligence per se. The exception upon which he relies provides:

(a) The provisions of this code shall supplement any and all laws relating to fire safety and shall apply to all persons without restriction, unless specifically exempted.

(b) The provisions of this code shall apply to existing conditions as well as to conditions arising after the adoption thereof, except that conditions legally in existence at the adoption of this code and not in strict compliance therewith shall be permitted to continue *only if, in the opinion of the chief, they do not constitute a distinct hazard to life or property.*

UFC § 1.103 (emphasis added). This exception is characterized as a type of "grandfather clause" because it excuses certain nonconforming conditions in buildings in existence prior to the adoption of the code. The issue we must determine is whether the applicability of the grandfather clause is triggered only by some specific action of the fire chief, manifesting his opinion that the nonconforming provisions are not a "distinct hazard to life or property," or whether, once the building has been inspected, the exception presumptively applies to older buildings unless the fire chief cites the nonconforming conditions as hazardous.

Because part of our analysis turns on the effect of Chief Hannon's actions relative to the noncomplying conditions, we consider the cited and uncited violations separately.

### CITED VIOLATION: ABSENCE OF A FIRE DOOR

A fire door in the boiler room is required by both UFC § 10.402(a) and Appendix I–A § 7. As to whether the absence of a fire door in the boiler room constituted negligence per se, we consider the facts of this case in light of the established two-part test: are the property owners within the class of persons the requirement is designed to protect and is the underlying purpose of the UFC to prevent the type of damages the property owners suffered here? *Pacific Indemnity Co.*, 260 N.W.2d at 558–59. The answer is clearly yes. The fire code was plainly intended to protect against damage to

---

**6.** The issue of negligence and causation are two separate issues in this case. *See Raymond*, 282 Minn. at 113, 163 N.W.2d at 54 (Violation of the building code was negligence per se, exclusion of the code was prejudicial error and the case was remanded to determine whether the violation was the proximate cause of the injury); W. Page Keeton et al., *Prosser and Keeton on the Law of Torts*, § 36, at 229–230 (5th ed. 1984) ("Once the statute is determined to be applicable * * * a majority of the courts hold that the issue of negligence is thereupon conclusively determined * * *. There will still remain open such questions as the causal relation between the violation and the harm to the plaintiff * * *.") According to the basic jury instruction for negligence per se, the inclusion of a separate causation instruction is optional. *See* 4 Minn.Dist.Judges Ass'n, *Minnesota Practice*, JIG 102 (3d ed. 1986). Thus, if appellant's violation of the UFC constitutes negligence per se, the jury must only determine whether that negligence caused the harm.

property in and around the source of the fire. *See* UFC § 1.102; Minn.R. 7510.0200 (1983). Furthermore, there is nothing in the code to suggest that a breach of the provisions is limited to only prima facie evidence of negligence. The UFC establishes the applicable standard of care in this case, therefore a violation of the fire door requirement is negligence per se. *See Pacific Indemnity*, 260 N.W.2d at 559; *Johnson v. Farmers & Merchants Bank of Balaton*, 320 N.W.2d 892 (Minn.1982).[7]

■ But does UFC § 1.103(b), the grandfather clause, exempt Roberts from liability for this violation and thus negate the application of the negligence per se doctrine? We conclude it does not. Under any possible interpretation of the grandfather clause, a nonconforming condition which is specifically cited by a fire official and is not brought into compliance cannot be excused. After Chief Hannon's order to install a fire door in the boiler room, pursuant to UFC § 10.402(a), the absence of the fire door was clearly an unexcused violation of the UFC and therefore constituted negligence per se. As a result, we conclude that the trial court committed reversible error by failing to instruct the jury that Roberts' fire door violation of the UFC was negligence per se. *See Lewis v. Equitable Life Assurance Soc'y of the U.S.*, 389 N.W.2d 876, 885 (Minn.1986); *Raymond*, 282 Minn. at 113, 163 N.W.2d at 54. We affirm the court of appeals' decision on this issue.

## UNCITED VIOLATIONS

The remaining three nonconforming conditions existing at the time of the fire were never cited by the fire chief.[8] Two of these conditions, the lack of a sprinkler system in

the basement and the lack of fire stops in the pipe chases, violate provisions in both the main body of the UFC and the Appendix. The third condition, the lack of a proper fire-resistant ceiling in the boiler room, violated only the main body of the UFC; there is no corollary provision in the Appendix. In light of our earlier analysis, it is clear that these three violations of provisions in the main body of the UFC constitute negligence per se, unless the grandfather clause excuses the violations.[9]

■ The grandfather clause provides that conditions not in compliance with the UFC may continue "only if, in the opinion of the chief, they do not constitute a distinct hazard to life or property." UFC § 1.103(b). The critical question is whether the grandfather clause is triggered only by some affirmative action of the fire chief manifesting his opinion that the nonconforming provisions are not a "distinct hazard to life or property" or whether, once the building has been inspected, the exception presumptively applies to older buildings unless the fire chief cites the nonconforming conditions as hazards. Put another way, after a fire chief inspects a building and cites certain code violations but is silent towards others, is it reasonable to infer that the fire chief has implicitly concluded that the uncited nonconforming conditions do not constitute a distinct hazard to life or property? We conclude that the answer is yes.

■ By its own terms, reasonableness is a key concept to the UFC. For example, the express purpose of the code is to enforce uniform standards which provide a *reasonable degree* of safety to people and property from the hazards of fires. Minn.R. 7510.0200 (1983); UFC § 1.102. In fact, many of the

---

7. The court of appeals has previously held that violation of the UFC constitutes negligence per se. *Thies v. St. Paul's Evangelical Lutheran Church of Litchfield, Minn.*, 489 N.W.2d 277, 280 (Minn.App.1992).

8. The three uncited violations were of (1) UFC § 10.401 and Appendix I–A, § 3 (lack of fire stops in pipe chases); (2) UFC § 10.309(b)(1) and Appendix I–A, § 4 (lack of sprinkler system in the basement); and (3) UFC § 10.401 (lack of fire-resistant ceiling in the boiler room).

9. We note that the harm in this case was exclusively property damage, but the purpose of Appendix I–A is limited to providing a "reasonable degree of safety to persons." As a result, under these facts, the violation of the Appendix I–A provisions fails to satisfy the two-part negligence per se test because the damage at issue here is not the type of damage sought to be avoided by the rule. Thus, the violation of Appendix I–A, §§ 3 and 4 was properly considered by the jury as merely evidence of negligence and not negligence per se.

UFC provisions are couched in language of reasonableness.[10] Similarly, when a property owner has been given a list of cited UFC violations and told to bring those noncomplying conditions into compliance with the code, we believe it is reasonable to infer that the fire chief has implicitly found that the uncited conditions are not distinct fire hazards. Unlike the court of appeals, we do not believe the grandfather clause should be interpreted to require the fire chief to make an affirmative finding that each and every nonconforming condition in a building does not constitute a distinct hazard to life or property. Such an interpretation, we believe, is unreasonable for several reasons. First, it is impractical to put such an onerous burden on a fire official who is most likely already understaffed and overworked, particularly in rural portions of the state. Second, the plain language of the grandfather clause simply does not require the fire chief to manifest his opinion in an affirmative finding. We are also mindful of the potentially devastating economic consequences of a more restrictive application of the grandfather clause and believe such results are precisely what it was meant to avoid. Therefore, we reverse the court of appeals and hold that the grandfather clause is applicable under these facts to preclude Roberts from being held liable for negligence based on the uncited violations of the main body of the UFC.

Finally, we also address whether the grandfather clause extends to the Appendix I–A provisions. We need look no further than the plain language of Appendix I–A, which expressly provides:

> The purpose of this appendix is to provide a reasonable degree of safety to persons occupying *existing buildings that do not conform with the minimum requirements of this code* by providing for alterations to such existing buildings.

UFC Appendix I–A § 1(a) (emphasis added). Appendix I–A, a separate section of the UFC directed specifically to the safety of persons within buildings which do not conform to minimum UFC requirements, does not contain a grandfather clause and applying the grandfather clause of the main body of the UFC would directly undermine the unambiguous language requiring alterations to meet those requirements. As a result, we hold that the grandfather clause is not applicable to Appendix I–A provisions.

■ In summary then, we conclude that Roberts' failure to conform to UFC § 10.402(a) requiring a fire door is not covered by the grandfather clause because the fire chief cited the violation and ordered compliance. Therefore, the trial court erred in failing to give a negligence per se instruction in relation to Roberts' violation of UFC § 10.402(a). The other three violations of

**10.** For example, UFC § 1.102 expressly provides:
(a) It is the intent of this code to prescribe regulations consistent with nationally recognized good practice for the *safeguarding to a reasonable degree* of life and property from the hazards of fire and explosion * * *.
(Emphasis added).
Furthermore, UFC § 2.102 allows the fire chief reasonable discretion in enforcing the code:
> The chief, with the approval of the administrator, is authorized to make and enforce such rules and regulations for the prevention and control of fires and fire hazards as may be necessary from time to time to carry out the intent of this code.

Similarly, UFC § 2.301 provides:
(a) The chief may modify any of the provisions of this code upon application in writing by the owner or lessee or his duly authorized representative where there are practical difficulties in the way of carrying out the strict letter of the code, provided that the spirit of the code shall be complied with, public safety secured and substantial justice done.

Additionally, UFC § 2.303, which incorporates Uniform Fire Code Standards into the UFC, states:
(b) **Recognized Standards.** Whenever this code is inapplicable for any reason to any situation involving the protection of persons and property from the hazards of fire and explosion, the materials, methods of construction, installations, practices or operations necessary to provide such protection shall, *to a reasonable degree*, be in accordance with nationally recognized and accepted standards * * *.
(Emphasis added).
Finally, even the purpose of Appendix I–A is defined in terms of reasonableness:
(a) **Purpose.** The purpose of this appendix is *to provide a reasonable degree of safety* to persons occupying existing buildings that do not conform with the minimum requirements of this code by providing for alterations to such existing buildings.
(Emphasis added).

the main body of the UFC, specifically §§ 10.309(b)(1) and 10.401, requiring respectively a sprinkler system, a fire-resistant ceiling, and fire stops in the pipe chases are covered by the grandfather clause because the fire chief failed to cite them in his inspection of the building. We affirm the court of appeals' decision on the issue of the trial court's reversible error in failing to give a negligence per se instruction. We reverse the court of appeals' decision on the issue of the applicability of the grandfather clause to the uncited violations. Finally, we remand the case for a new trial on the issue of causation in relation to the cited fire door violation.

Affirmed in part, reversed in part and remanded.