Steven ELDER, Trustee for the next of kin of Peter E. Swanson, Deceased, Plaintiff,

v.

ALLSTATE INSURANCE COMPANY, Defendant.

No. Civ. 03–5320RHK/RLE.

United States District Court,
D. Minnesota.

Oct. 22, 2004.

William D. Harper and Lori L. Burgan, Harper & Peterson, PLLC, Woodbury, MN, for Plaintiff.

Brian A. Wood, William L. Davidson, and Sara J. Lathrop, Lind, Jensen, Sullivan & Peterson, PA, Minneapolis, MN, for Defendant.

## MEMORANDUM OPINION AND ORDER

KYLE, District Judge.

### Introduction

On a January afternoon, Peter Swanson's automobile fell through the ice of a northern Minnesota lake. Swanson called his auto insurer, Defendant Allstate Insurance Company ("Allstate"), to inquire whether his insurance would pay for the removal of his car from the lake and he was told erroneously that his loss was not covered under his insurance policy.[1] Swanson was killed the next day while attempting to remove his automobile from the lake. Steven Elder, the Trustee for Swanson's next of kin ("Plaintiff"), has sued Allstate for negligence and breach of contract alleging that Swanson's death was a direct result of Allstate's failure to provide coverage. Allstate has moved for summary judgment on both claims. For the reasons set forth below, the Court will grant Allstate's Motion with respect to Plaintiff's negligence claim, but will deny the Motion with respect to the breach of contract claim.

### Background

Peter Swanson and his wife, Donna, owned a 1991 Grand Prix automobile which they insured through Allstate. (Compl. ¶¶ IV, V.) On January 12, 2003, Swanson's daughter, Britt, and her boyfriend, Christopher Paitrick, were driving over frozen Grand Lake in St. Louis County, Minnesota, when the vehicle broke through the ice and sank to the bottom of the lake. (Id. ¶ IV.) Paitrick and Britt escaped unharmed. (Id.)

After getting out of the automobile, Paitrick called 911 and spoke with Sergeant Marleen Hall of the St. Louis County Sheriff's Department. (Paitrick Dep. Tr. at 34; Hall Dep. Tr. at 6–10.) Sgt. Hall learned from Paitrick that Swanson was the automobile's registered owner and she phoned Swanson to notify him about his car falling through the ice. (Hall Dep. Tr. at 10, 14.) Swanson confirmed that the automobile was registered to him, stated that it was insured through Allstate, and provided Sgt. Hall with the Allstate insurance policy number. (Id. at 15.) Sgt. Hall advised Swanson to call Allstate and that it was his responsibility to have the automobile removed from the lake. (Id. at 16–17.) She noted that he may have as little as three days to remove the car under the applicable law, but that she would check the law and get back to him. (Id.) She also stated that if he did not remove the car within the time allowed, the Sheriff's office would tow it and he would have to pay for the tow as well as civil penalties. (Harper Aff. Ex. C.)

Swanson's automobile was insured by Allstate through the Marshall Agency in Duluth, Minnesota. (Marshall Dep. Tr. at 5, 12, 18) Swanson's Allstate Automobile

---

1. Allstate disputes whether Swanson called and argues that there is no admissible evidence to support this claim. The Court will not address these arguments except to say that genuine issues of material fact exist as to whether Swanson made the call and as to what the Allstate representative told him.

Policy ("Policy") contained comprehensive coverage, which insured against all losses other than collision. (*Id.* at 19–21; Lathrop Aff. Ex. 15 a & b (Policy).) According to Frank Marshall of the Marshall Agency, "sinking through the ice is a covered peril." (Marshall Dep. Tr. at 21.) The Policy provided, in relevant part,

COVERAGE HH [as modified by endorsement AU1400]

Auto Comprehensive Insurance

Allstate will pay for loss to your insured auto or a non-owned auto not caused by collision. Coverage includes: Glass Breakage. Missiles. Falling Objects. Fire. Theft or Larceny. Explosion. Earthquake. Windstorm. Hail, Water, or Flood. Malicious Mischief or Vandalism. Riot. Civil Commotion. Collision with bird or animal. . . .

* * * * * *

COVERAGE JJ

Towing and Labor Costs

Allstate will pay costs for labor done at the initial place of disablement of your insured auto or a non-owned auto. We will also pay for towing made necessary by the disablement. . . .

(Lathrop Aff. Ex. 15 a & b (Policy).)

Swanson called Allstate and an Allstate representative told him that the Policy did not cover expenses of removing his automobile from the lake. (Paitrick Dep. Tr. at 42–47; Britt Swanson Dep. Tr. at 44–51; Donna Swanson Dep. Tr. at 44–50.) Swanson then called a local towing company to inquire whether it would remove his car from the lake. (Smolke Dep. Tr. at 8–9.) It declined, due to the dangerousness of the ice, and knew of no other Duluth towing company that removed vehicles from frozen lakes. (*Id.* at 7, 20–22.) Swanson then called his nephew, Tim Peterson, who had once removed an automobile from a lake by creating a pulley-like system out of trees. (Donna Swanson Dep. Tr. at 57–58; Peterson Dep. Tr. at 16.) Peterson agreed to meet Swanson at the lake the next day. (Peterson Dep. Tr. at 13, 18.)

On the following day, Sgt. Hall informed Swanson that he had thirty days to remove his automobile from the lake. (Hall Dep. Tr. at 18, 22.) But because Swanson had arranged with Peterson and others to remove the car, he decided to proceed with the removal. (Peterson Dep. Tr. at 22–23.) At the lake, the group assembled a tripod of poplar logs over the hole in the ice to create a pulley-like system. (Peterson Dep. Tr. at 27–30; Paitrick Dep. Tr. at 61–67.) The group placed hooks on the submerged car with the help of an underwater camera and attached a winch cable to another vehicle. (Peterson Dep. Tr. at 27–30.) Using this system, they were able to pull most of the car out of the water, but were unable to get the front tires up onto the ice. (Paitrick Dep. Tr. at 64; Peterson Dep. Tr. at 30.) To help get the rest of the car onto the ice, they placed logs behind the front tires of the automobile. (Paitrick Dep. Tr. at 64.) Meanwhile, Swanson and others used logs to pry up the front of the car. (Peterson Dep. Tr. at 40.) As the group continued to pull the car out of the water, one of the logs underneath the front tires shot out and struck Swanson in the head. (Paitrick Dep. Tr. at 64–68.) Swanson died as a result of his injuries. (*Id.* at 68; Schilla Dep. Tr. at 53–54; Lathrop Aff. Ex. 12.)

The Trustee of Swanson's estate has now sued Allstate alleging (1) negligence and negligence per se (Count One) and (2) breach of contract (Count Two). (Compl.¶¶ XI–XVII, XVIII–XXII.) Allstate's summary judgment motion followed.

## Standard of Review

Summary judgment is proper if, drawing all reasonable inferences favorable to the nonmoving party, there is no genuine

issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. *See Celotex*, 477 U.S. at 322, 106 S.Ct. 2548; *Mems v. City of St. Paul, Dep't of Fire & Safety Servs.*, 224 F.3d 735, 738 (8th Cir.2000). The court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. *See Graves v. Arkansas Dep't of Fin. & Admin.*, 229 F.3d 721, 723 (8th Cir.2000); *Calvit v. Minneapolis Pub. Schs.*, 122 F.3d 1112, 1116 (8th Cir.1997). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. *See Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir.1995).

## Analysis

### I. Negligence and Negligence Per Se

Plaintiff asserts that Allstate was negligent in evaluating Swanson's claim and in erroneously informing him that there was no coverage for the removal of his car from the lake. (*See* Pl.'s Mem. in Opp'n at 20.) In sum, Plaintiff argues that had Allstate not advised Swanson that he did not have coverage for his submerged automobile, Swanson would not have attempted to pull the car out of the lake by himself and he would not have been killed. (*See id.* at 18–22.)

The essential elements of a negligence claim are: (1) the existence of a duty of care; (2) a breach of that duty; (3) an injury; and (4) breach of the duty was the proximate cause of the injury. *Lub-*

*bers v. Anderson*, 539 N.W.2d 398, 401 (Minn.1995). Negligence consists of a departure from a standard of conduct required by the law for the protection of others against unreasonable risk of harm. *Seim v. Garavalia*, 306 N.W.2d 806, 810 (Minn.1981). The standard for ordinary negligence is "the traditional standard of the reasonable man of ordinary prudence." *Id.* (citation and internal quotations omitted). Negligence per se may exist, however, when the reasonable person standard is supplanted by a standard of care established by statute. *Id.; see Scott v. Indep. Sch. Dist. No. 709, Duluth*, 256 N.W.2d 485, 488 (Minn.1977). Stated another way, in negligence per se cases, courts "adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation." Restatement (Second) of Torts § 286. This concept was summarized in an early decision by the Minnesota Supreme Court:

> Negligence is the breach of legal duty. It is immaterial whether the duty is one imposed by the rule of common law requiring the exercise of ordinary care not to injure another, or is imposed by a statute designed for the protection of others. . . . The only difference is that in the one case the measure of legal duty is to be determined upon common-law principles, while in the other the statute fixes it, so that the violation of the statute constitutes conclusive evidence of negligence, or, in other words, negligence per se. . . . All that the statute does is to establish a fixed standard by which the fact of negligence may be determined.

*Osborne v. McMasters*, 40 Minn. 103, 41 N.W. 543, 543–44 (1889). An example illustrates the negligence per se doctrine's application:

> If the statutory speed limit on a road is 35 m.p.h. and the defendant drives 40

m.p.h., causing him to collide with the plaintiff pedestrian and to injure her, the plaintiff may establish the breach element of her negligence claim by pointing to the violation of the speed limit. The defendant is barred from putting on evidence, specific to his situation, that driving at 40 m.p.h. on that particular road was reasonable because the "violation of the statute constitutes conclusive evidence of negligence." *Osborne v. McMasters*, 40 Minn. 103, 41 N.W. 543, 544 (1889)....

*Talley v. Danek Med. Inc.*, 179 F.3d 154, 158 (4th Cir.1999) (applying Virginia law).

■ For a statute to establish the standard of care, the statute's purpose must be:

(a) to protect a class of persons which includes the one whose interest is invaded, and

(b) to protect the particular interest which is invaded, and

(c) to protect that interest against the kind of harm which has resulted, and

(d) to protect that interest against the particular hazard from which the harm results.

*Scott*, 256 N.W.2d at 488 (citing Restatement (Second) of Torts § 286) (internal quotations omitted). Stated differently, "breach of a statute gives rise to negligence per se if the persons harmed by that violation are within the intended protection of the statute and the harm suffered is of the type the legislation was intended to prevent." *Alderman's Inc. v. Shanks*, 536 N.W.2d 4, 8 (Minn.1995) (citation omitted).

■■ But the negligence per se doctrine does not create new causes of action. Rather, "where an underlying common law cause of action exists, a statutory enactment could establish a standard of care in a negligence action." *Bruegger v. Faribault County Sheriff's Dep't*, 497 N.W.2d 260, 262 (Minn.1993); *see Seeman v. Liberty Mut. Ins. Co.*, 322 N.W.2d 35, 37 (Iowa 1982) ("A statutory duty or standard ... does not provide the cause of action. The cause of action itself is a creation of the common law that is inherent in the tort of negligence. The duty or standard of care ... is merely an element of proof that comes into play after an action has been rightfully commenced pursuant to the preexisting common-law cause of action." (applying Iowa law)); *Talley*, 179 F.3d at 158 ("[T]he negligence per se doctrine does not create new causes of action. Rather, it recognizes a legislatively created standard of care to be exercised where there is an underlying common-law duty." (applying Virginia law)). Moreover, liability in tort does not follow automatically from the breach of a statutorily defined standard of care. The plaintiff must also show that the breach was the proximate cause of the plaintiff's injury. *See Seim*, 306 N.W.2d at 810.

■ Thus, the potential for the negligence per se doctrine to create a mode of recovery is limited in at least three ways. First, the harm suffered must be of the type the statute was intended to prevent. *Alderman's*, 536 N.W.2d at 8; *see Scott*, 256 N.W.2d at 488. Second, there must be an existing underlying common law cause of action. *See Bruegger*, 497 N.W.2d at 262. And, third, the plaintiff must show proximate cause. *See Seim*, 306 N.W.2d at 810.

■ In this case, Plaintiff contends that Allstate was negligent per se for violating Minnesota's Unfair Claims Practices Act ("UCPA"). (Pl.'s Mem. in Opp'n at 19–20.) The purpose of the UCPA is "to regulate trade practices in the business of insurance ... by defining ... all such practices in this state which constitute unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined." Minn.Stat. § 72A.17; *see Morris v. Am.*

*Family Mut. Ins. Co.*, 386 N.W.2d 233, 234 (Minn.1986); *see also* Gerald M. Sherman and Richard R. Crowl, *The Judicial Response to Unfair Claims Practices Laws: Applying the National Experience to the Minnesota Act,* 12 Wm. Mitchell L.Rev. 45 (1986) (explaining the history of the UCPA). There is no private right of action for a violation of the UCPA; rather, the UCPA is enforced by Minnesota's Commissioner of Commerce and Attorney General. *Morris,* 386 N.W.2d at 236, 238.

Plaintiff asserts that when the Allstate representative denied coverage, Allstate violated the following provisions of the UCPA:

> Subd. 8. Standards for claim denial. The following acts by an insurer ... constitute unfair settlement practices:
>
> (1) denying a claim or any element of a claim on the grounds of a specific policy provision, condition, or exclusion, without informing the insured of the policy provision, condition, or exclusion on which the denial is based;
>
> (2) denying a claim without having made a reasonable investigation of the claim; ...
>
> (5) denying a claim without including the following information:
>
> (i) the basis for the denial;
>
> (ii) the name, address, and telephone number of the insurer's claim service office or the claim representative of the insurer to whom the insured or claimant may take any questions or complaints about the denial.

Minn.Stat. § 72A.201, subd. 8; (*see* Pl.'s Mem. in Opp'n at 20).

Allstate disputes Plaintiff's negligence per se claim. Although not argued in its briefs, Allstate first argued at oral argument that the UCPA was not enacted by the Minnesota legislature to protect against the hazard encountered by Swanson. Next, relying upon the Minnesota Supreme Court's decision in *Morris,* it contends that because there is no private right of action to enforce the UCPA, there can be no negligence claim created by way of its violation. (Def.'s Reply Mem. in Supp. at 8.) Finally, it asserts that even if it breached a duty of care owed to Swanson, its denial of coverage was not the proximate cause of Swanson's death as a matter of law. (*Id.* at 12–13; Def.'s Mem. in Supp. at 13–16.)

█ Plaintiff's negligence per se claim fails as a matter of law. First, the harm Swanson suffered is not of the type the UCPA was intended to prevent. In order for the Court to adopt the UCPA's requirements as the standard of care, the UCPA's "purpose [must be] found to be exclusively or in part ... (b) to protect the particular interest which is invaded, and (c) to protect that interest against the kind of harm which has resulted, and (d) to protect that interest against the particular hazard from which harm results." *Scott,* 256 N.W.2d at 488 (citation and internal quotation omitted). Stated differently, "breach of a statute gives rise to negligence per se if ... the harm suffered is of the type the legislation was intended to prevent." *Alderman's,* 536 N.W.2d at 8 (citation omitted). Here, the UCPA's purpose is "to regulate trade practices in the business of insurance" by prohibiting unfair or deceptive trade practices. Minn. Stat. § 72A.17. As such, it was intended to protect those who purchased insurance from the insurer's deceptive practices, such as denying claims without identifying the policy provision upon which the denial was based, conducting no investigation of the claim, or failing to provide information of where an insured could take complaints. *See id.* § 72A.201, subd. 8. There is no indication that the UCPA was intended to prevent physical harm. Therefore, the UCPA cannot establish the standard of care in this case.

Second, Plaintiff has failed to show that "an underlying common law cause of action exists" to which the UCPA would "establish a standard of care." [2] *Bruegger*, 497 N.W.2d at 262. The Minnesota Supreme Court's analysis *Bruegger* is instructive. In *Bruegger*, plaintiffs attempted to use the Crime Victims Reparations Act ("CVRA"), which permits crime victims to receive compensation for economic losses resulting from their injuries, to establish a negligence claim against the sheriff's department for its failure to inform them of their CVRA rights as required.[3] *Id.* at 261. After plaintiffs' reparations claims were denied by a court as untimely, they sued the sheriff's department. *Id.* In rejecting plaintiffs' negligence claim, the Minnesota Supreme Court observed:

> In this case, no common law duty required the sheriff's department to inform the Brueggers of their potential rights of recovery under the CVRA. The requirement to inform did not arise until the enactment of the CVRA. We note that the CVRA does not provide for civil liability for a law enforcement agency's failure to inform citizens of their potential rights to recover under the act. In the absence of such civil liability, we decline to speculate as to whether the legislature intended to impose civil liability in tort under the CVRA. Principles of judicial restraint preclude us from creating a new statutory cause of action that does not exist at common law where the legislature has not either by the

statute's express terms or by implication provided for civil tort liability.

*Id.* at 262.

Similar to *Bruegger*, Plaintiff has shown no underlying common law duty that required Allstate to inform Swanson of the policy provision on which the claim denial was based, to make a reasonable investigation of his claim, or to inform him of where he could take his complaints. These requirements did not arise until the enactment of the UCPA. This point was recognized the Minnesota Supreme Court in *Morris* when it observed that a "private cause of action [to enforce the UCPA] *would result in significant changes in our common law.*" *Morris*, 386 N.W.2d at 237 (emphasis added). Given that the negligence per se doctrine does not create new causes of action, but only recognizes a legislatively created standard of care to be exercised where there is an underlying common law duty, *see Bruegger*, 497 N.W.2d at 262; *Seeman*, 322 N.W.2d at 37; *Talley*, 179 F.3d at 158, and given the observations in *Morris*, this Court concludes that the UCPA is not amenable to a negligence per se claim for relief in this case.

 Finally, Plaintiff cannot establish proximate cause. In order for a defendant's negligence to be the proximate cause of an injury: (1) the act must be one which the defendant ought, in the exercise of ordinary care, to have anticipated was likely to result in injury to others; and (2) the plaintiff must show that the defen-

---

2. Allstate did not have a duty to give aid or protection to Swanson, as there has been no showing that a "special relationship"—as that term has been defined—existed between them. *See H.B. by Clark v. Whittemore*, 552 N.W.2d 705, 707 (Minn.1996). Additionally, Minnesota does not recognize a cause of action for negligent breach of contract. *See Lesmeister v. Dilly*, 330 N.W.2d 95, 102 (Minn.1983).

3. The CVRA provides that "[a]ll law enforcement agencies investigating crimes shall provide forms to each person who may be eligible to file a claim pursuant to [the CVRA] and to inform them of their rights thereunder." *Bruegger*, 497 N.W.2d at 261 n. 1 (quoting Minn.Stat. § 611A.66).

dant's conduct was "a substantial factor in bringing about the injury." *Lubbers*, 539 N.W.2d at 401 (citations and internal quotations omitted). "Generally, proximate cause is a question of fact for the jury; however, where reasonable minds can arrive at only one conclusion, proximate cause is a question of law." *Id.* at 402 (citation omitted). In this case, reasonable minds can arrive at only one conclusion— Allstate's alleged negligence was not the proximate cause of Swanson's death. Plaintiff's arguments to the contrary are premised on a "but for" analysis which the Minnesota Supreme Court has rejected. *Id.; Harpster v. Hetherington*, 512 N.W.2d 585, 586 (Minn.1994). Essentially, Plaintiff argues that had Allstate not advised Swanson that he did not have coverage for his submerged automobile, he would not have attempted to pull the car out of the lake by himself and would not have been killed. The problem with the "but for" analysis is that "it converts events both near and far, which merely set the stage for an accident, into a convoluted series of 'causes' of the accident." *Lubbers*, 539 N.W.2d at 402 (citation and internal quotations omitted). While it is possible to conclude that Allstate's conduct "set the stage for the accident," that conduct was not the proximate cause of the accident. *Id.*

This conclusion is buttressed by the Minnesota Court of Appeals decision in *Danielson v. City of Brooklyn Park*, 516 N.W.2d 203, 207 (Minn.Ct.App.1994). In *Danielson*,

> A city employee notified the Danielsons that a tree on their property was infected with Dutch Elm disease and, pursuant to a City ordinance, ordered the Danielsons to remove the tree. The employee did not advise the Danielsons as to the recommended method of removal, nor did they seek such advice
>
> Some time after being notified that the tree must be removed, Donald Danielson placed a 22-foot extension ladder on top

of his van and, carrying a chain saw, climbed the ladder and began to cut branches from the tree. Danielson fell head-first onto the ground from a height of approximately 35 to 40 feet and sustained severe and permanent head injuries.

> After the accident, the Danielsons sought professional opinions as to whether the City's diagnosis of Dutch Elm disease was in error. These opinions indicated that the tree most likely did not have Dutch Elm disease. The Danielsons sued the City, contending that the City was negligent because it incorrectly diagnosed the tree with Dutch Elm disease and ordered its removal.

*Danielson*, 516 N.W.2d at 204–05. Affirming summary judgment in favor of the City, the court found no proximate cause existed between the incorrect diagnosis and Danielson's injury. *Id.* at 207. Rejecting the application of "but for" causation, the court concluded, "While it may be argued that but for the City's order based upon the misdiagnosis Danielson would not have suffered his injury, the misdiagnosis was not the cause of his injury." *Id.* Here, as in *Danielson*, it may be argued that but for Allstate's incorrect denial of coverage Swanson would not have been killed, the incorrect denial of coverage was not the cause of his death.

At oral argument, Plaintiff's counsel attempted to distinguish *Danielson* from this case by asserting that Swanson was compelled to act or acted non-volitionally, whereas Danielson was not similarly compelled. The Court cannot agree. First, Plaintiff's compulsion argument is not factually supportable. For example, it is undisputed that Swanson had thirty days to remove his car before the sheriff's department would remove it and issue Swanson a fine. As such, he could have waited a few

days to act and could have called other towing companies to see if they could remove the car. In addition, the alleged compulsion forcing Swanson to act came from sources unrelated to Allstate's denial of coverage: i.e., the law requiring removal in thirty days, the one towing company who would not remove the car, and the possible freezing-over of the hole in the ice. These "compelling" factors would likely have been present even if Allstate had granted coverage. Furthermore, this case cannot be reasonably distinguished from *Danielson* on this point because Danielson was "compelled" to act by the City—which "pursuant to a City ordinance, ordered the Danielsons to remove the tree," *Danielson*, 516 N.W.2d at 204—in much the same way Swanson was "compelled" to act by the sheriff—who notified Swanson that state law required the car to be removed in thirty days.

Second, Plaintiff's compulsion argument is not legally supportable. When courts discuss legally cognizable compulsion, they usually speak in terms of duress. As observed long-ago:

> [D]uress is coercion by means of physical force or unlawful threats which destroys the victim's free will and compels him to comply with some demand of the party exerting the coercion. The standards of resisting power of the victim are personal and subjective rather than objective—that is, the existence of duress is to be determined by whether the coercion was of such a character as to overcome the free will of the victim rather than that of a person of ordinary courage and firmness.... The test is not the nature of the threats, but rather the state of mind induced thereby in the

victim, or ... "whether or not the party really had a choice,—whether 'he had his freedom of exercising his will.'"

*Wise v. Midtown Motors*, 231 Minn. 46, 42 N.W.2d 404, 407 (1950) (footnote and citations omitted). In this case, not only did Allstate not threaten Swanson in any way, a reasonable jury could not conclude that Swanson did not "really have a choice" or lacked "'freedom of exercising his will.'" *Id.* While Allstate's denial of coverage may have put Swanson in a tough spot with difficult choices to make, he had choices and the exercise of free-will.[4]

## II. Breach of Contract

Plaintiff also alleges that Allstate breached the Policy when "Swanson was told over the telephone by Allstate's customer claims center employee that his policy did not cover his claimed loss." (Pl.'s Mem. in Opp'n at 32.) Specifically, Plaintiff contends that Allstate breached the Policy's Auto Comprehensive Insurance and Towing and Labor Costs provisions. (*Id.*) "An insurance policy is a contract, the terms of which determine the rights and obligations of the contracting parties." *Olson v. Rugloski*, 277 N.W.2d 385, 387 (Minn.1979) (citations omitted). "The insurer is obligated to pay when the insured suffers a loss covered by the policy" and when "the insurer refuses to pay ... it breaches the contract." *Id.*

 Allstate argues that it had no obligation under the Policy "to give Swanson an accurate coverage analysis on the phone." (Def.'s Reply Mem. in Supp. at 14; *see* Def.'s Mem. in Supp. at 17.) But this argument misses the point. While Allstate may not have had an obligation

4. In his memorandum in opposition, Plaintiff suggests that Allstate is liable for negligent supervision and training. (Pl.'s Mem. in Opp'n at 21–22.) This claim was not pled in Plaintiff's Complaint. Moreover, for the reasons stated above, Plaintiff cannot establish that any alleged negligent supervision and training was the proximate cause of Swanson's death.

under the Policy to provide accurate coverage analysis, it had an obligation to perform as promised. The Policy's Auto Comprehensive Insurance provision states that "Allstate will pay for loss to your insured auto.... Coverage includes: ... Hail, Water, or Flood." (Lathrop Aff. Ex. 15 a & b (Policy).) Its Towing and Labor Costs provision states that "Allstate will pay costs for ... towing made necessary by the disablement." (*Id.*) In addition to the Policy's language, Swanson's insurance agent testified that "sinking through the ice is a covered peril." (Marshall Dep. Tr. at 21.) Thus, if a jury finds that Swanson called Allstate and Allstate denied coverage,[5] the same jury could also find that Allstate breached the Policy by declining to pay for the towing expenses.[6]

■ The issue then becomes what damages are available to Plaintiff for Allstate's breach of contract. Plaintiff contends that he is entitled to all consequential damages flowing from the breach as well as "extra-contract damages." (Pl.'s Mem. in Opp'n at 33.) The claimed damages are Swanson's medical and burial expenses, his next of kin's loss of society and companionship, and other wrongful death damages allowed under Minn.Stat. §§ 573.02, *et seq.*[7] (*See* Compl. ¶ XXII.) Allstate, in contrast, asserts that the proper remedy would be the cost of removing the car from the lake. (Def.'s Mem. in Supp. at 17; Def.'s Reply Mem. in Supp. at 14–16.)

■ "When the insurer refuses to pay ... it breaches the contract and is liable for the loss that naturally and proximately flows from the breach." *Olson*, 277 N.W.2d at 388 (citation omitted). "[N]on-breaching parties should recover damages sustained by reason of the breach which arose naturally from the breach or could reasonably be supposed to have been contemplated by the parties when making the contract as the probable result of the breach." *Lesmeister v. Dilly*, 330 N.W.2d 95, 103 (Minn.1983) (citing *Hadley v. Baxendale*, 156 Eng. Rep. 145 (1854)); *see Imdieke v. Blenda–Life, Inc.*, 363 N.W.2d 121, 125 (Minn.Ct.App.1985). Whether the damages were contemplated at the time the contract was made is a question of fact. *Franklin Mfg. Co. v. Union Pac. R.R. Co.*, 311 Minn. 296, 248 N.W.2d 324, 325 (1976); *Lassen v. First Bank Eden Prairie*, 514 N.W.2d 831, 838 (Minn.Ct.App.1994).

With respect to extra-contractual damages, they "are not recoverable for breach of contract except in exceptional cases where the breach is accompanied by an independent tort." *Deli v. Univ. of Minnesota*, 578 N.W.2d 779, 782 (Minn.Ct. App.1998) (citations omitted); *see Haagenson v. Nat'l Farmers Union Prop. & Cas. Co.*, 277 N.W.2d 648, 652 (Minn.1979) ("We have consistently held, in the absence of specific statutory provision therefor, that extra-contract damages are not recoverable for breach of contract except in excep-

---

**5.** Again, the parties hotly dispute this issue, but there are genuine issues of material fact precluding summary judgment.

**6.** Swanson's insurance agent, Frank Marshall, testified that Allstate paid the comprehensive loss sustained by the automobile. (*See* Marshall Dep. Tr. at 19.) Thus, Allstate's only outstanding obligation under the Policy appears to be for Swanson's expenses incurred in removing the car from the lake.

**7.** The measure of recovery in a wrongful death action is "the pecuniary loss resulting from the death." Minn.Stat. § 573.02, subd. 1. The term "pecuniary loss" is not limited to loss of income, but includes "loss of advice, comfort, assistance, and protection which the jury might find to be of pecuniary value and which the survivor could reasonably have expected if the decedent had lived." *Rath v. Hamilton Standard Division of United Technologies Corp.*, 292 N.W.2d 282, 284 (Minn. 1980) (citation and internal quotations omitted).

tional cases where the breach is accompanied by an independent tort." (citations omitted)). "The accompanying independent tort must be willful." *Lickteig v. Alderson, Ondov, Leonard & Sween, P.A.,* 556 N.W.2d 557, 561 (Minn.1996). This is "to insure that contract law is not swallowed by tort law." *Deli,* 578 N.W.2d at 782 (citation omitted). "The preservation of a boundary between contract and tort law is necessary to protect the specific interests and expectations each embodies." *Id.* (citations omitted).

Plaintiff's breach of contract damages are limited to the costs associated with the removal of the automobile from the lake—which do not encompass damages for wrongful death. First, under the circumstances of this case, no reasonable jury could find that Plaintiff's claimed consequential damages—such as Swanson's medical and burial expenses, his next of kin's loss of society and companionship, and other wrongful death damages— "arose naturally from the breach or could reasonably be supposed to have been contemplated by the parties when making the contract as the probable result of the breach." *Lesmeister,* 330 N.W.2d at 103; *see also Jepson v. Gen. Cas. Co. of Wis.,* 513 N.W.2d 467, 472 (Minn.1994) ("[P]eople should get the benefit of the contracts they enter into, nothing less and nothing more."). Plaintiff has produced no facts upon which a reasonable jury could conclude either that such damages arose naturally from the breach, or that such damages were contemplated by Swanson or Allstate when the Policy was issued. Second, Plaintiff is not entitled to extra-contractual damages. The Court has rejected Plaintiff's negligence claims and Plaintiff does not assert, and has not shown, any accompanying willful tort that would entitle him to extra-contractual damages. *See Lickteig,* 556 N.W.2d at 561; *Haagenson,* 277 N.W.2d at 652; *Deli,* 578 N.W.2d at 782. To hold otherwise would convert his breach of contract claim into a tort claim, which this Court cannot do. *See Deli,* 578 N.W.2d at 782.

Despite the case law to the contrary, Plaintiff's counsel argued at the hearing that extra-contractual damages are recoverable in this case absent an independent willful tort. He relies upon *Short v. Dairyland Insurance Co.,* 334 N.W.2d 384 (Minn.1983) and *McCarthy Well Co. v. St. Peter Creamery, Inc.,* 410 N.W.2d 312 (Minn.1987). Neither case, however, warrants such reliance. *Short* dealt with the fiduciary obligations that arise once an insurer assumes the defense of an insured in a lawsuit—an issue not involved here. *See Short,* 334 N.W.2d at 387–88; *see also Miller v. ACE USA,* 261 F.Supp.2d 1130, 1140–41 (D.Minn.2003) (discussing *Short*). *McCarthy* held that a party to a contract for services ungoverned by the Uniform Commercial Code could recover economic losses "under a negligence theory." *See McCarthy,* 410 N.W.2d at 315. But because Plaintiff's negligence claims in this case are without merit, *McCarthy* is of no aid to him. Accordingly, the principles enunciated by *Lickteig, Haagenson,* and *Deli* bar Plaintiff from recovering extra-contractual damages for Allstate's breach of contract.

### Conclusion

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED** that Defendant Allstate Insurance Company's Motion for Summary Judgment (Doc. No. 12) is **GRANTED IN PART** and **DENIED IN PART:**

1. Plaintiff's negligence claims alleged in Count One of his Complaint (Doc. No. 1) are **DISMISSED WITH PREJUDICE;**

2. The case will proceed on Plaintiff's breach of contract claim alleged in Count Two, subject to recoverable damages as determined above:

"Plaintiff's breach of contract damages are limited to the costs associated with the removal of the automobile from the lake—which do not encompass damages for wrongful death."